UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

NEW ORLEANS DIVISION

| | | |
|---|---|---|
| SHELBY WEBB COX, <br> Plaintiff. | * <br> * <br> * | CIVIL ACTION NO. 2:24-CV-01068 |
| v. | * <br> * | CIV DIVISION, SECTION I |
| MIGNON FAGET, LTD., <br> Defendant. | * <br> * <br> * <br> * | JUDGE LANCE M. AFRICK <br><br> MAGISTRATE JUDGE NORTH <br> JURY DEMAND |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, through undersigned counsel, comes Shelby Webb Cox ("Cox" or "Plaintiff") who submits this memorandum in support of her motion for attorneys' fees and expenses and represents the following:

**I.    PROCEDURAL HISTORY.**

After exhausting all administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and all pre-suit efforts to resolve this matter through settlement, Plaintiff filed a Complaint with this Court on April 26, 2024 asserting claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended, ("Title VII"), the Pregnancy Discrimination Act ("PDA") 42 U.S.C. § 2000(e)(k), and for violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* In addition, Plaintiff also asserted a claim for retaliatory and discriminatory discharge under the Louisiana Employment Discrimination Laws

("LEDL"), La. R.S. 23:341-342.[1] A jury trial was held in this Court on February 18, 2025, through February 21, 2025. A jury returned a verdict finding in favor of Plaintiff on all claims.[2] Accordingly, Plaintiff submits this fee application seeking reimbursement of attorneys' fees in the amount of $167,596.48 and out-of-pocket expenses in the amount of $17,314.43, for a grand total of $184,910.91. This motion is before the Court under Rule 54(d)(2)(A) which provides that "a claim for attorney's fees and related nontaxable expenses must be made my motion unless the substantive law requires those fees to be proved at trial as an element of damages." Plaintiff also attaches the certifications as required by Local Rule 54.2 via the attached Exhibits A, B, C, D, E, and F.

## II. LEGAL STANDARDS FOR DETERMINING FEE AWARDS UNDER FMLA AND TITLE VII.

1. FMLA.

Plaintiff seeks an award of fees under the FMLA. The unique language in the FMLA's attorneys' fee provision differs from that in Title VII (as discussed in Section 2 below). Specifically, 29 U.S.C. Section 2617 (a)(3) provide as follows:

> (3) Fees and costs
> The court in such an action **shall**, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.

The FMLA attorneys' fee provision differs in two respects: (1) it uses the word "shall" rather than "may"; and (2) the plaintiff need not be a "prevailing party" to be awarded fees. Congress used the word "shall" in the FMLA's attorneys' fee provision instead of the word "may," which is the language used in 42 U.S.C. § 1988 and most other attorneys' fee provisions. Therefore, under the FMLA the court ***must award reasonable attorneys' fees***. *C.f. Burnley v. Short,* 730

---

[1] Rec. Doc. 1.

F.2d 136, 141 (4th Cir. 1984) (holding that the use of the word "shall" in the Fair Labor Standards Act requires courts to award attorneys' fees).

A second differentiating characteristic of the FMLA's attorneys' fee provision is that the FMLA mandates that fees shall be awarded "in addition to any judgment awarded to the plaintiff." 29 U.S.C. § 2617(a) (3). Most attorneys' fee provisions permit the award of fees only to a "prevailing" or "successful" party. *See, e.g., Farrar v. Hobby,* 506 U.S. 103, (1992). However, under the broader FMLA attorneys' fee provision, a plaintiff may be eligible for fees even if she fails to meet the requirement that she be a "prevailing party." *McDonnell v. Miller Oil Co., Inc.,* 968 F. Supp. 288, 291 (E.D.Va.1997). However, in this case, Plaintiff is clearly the prevailing party.[3] Thus, with respect to all fees sought, the only inquiry is the reasonableness of the fees and expenses sought.

2. Title VII.

Title VII of the Civil Rights Act of 1964, 42 U.S.C.A.§ 2000e-5(k), provides that:

"In any action or proceeding under this subchapter the Court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the cost of the litigation."[4]

As with FMLA, the purpose of this provision is to effectuate the congressional policy against discrimination. *Clark v. American Marine Corp.,* 320 F. Supp. 709 (E.D.La.1970). In contrast to FMLA's mandates, for purposes of Title VII, Plaintiff's status as "prevailing party" entitles Plaintiff to attorneys' fees and costs. As shown below, Plaintiff was the prevailing party to her Title VII claims. As with all fees and expenses sought, however, Plaintiff must show that the same are reasonable.

---

[2] Rec. Doc. 63.
[3] This section is included only because there are pending post-trial motions regarding Plaintiff's FMLA claims. Plaintiff submits that even if the same are partially granted in favor of Defendant, Mignon Faget, on any single FMLA claim (something Plaintiff believes should not happen), she would still be entitled to attorneys' fees and expenses under the FMLA as all FMLA claims are inextricably intwined.

3

## III.  REASONABLENESS OF FEE AWARD SOUGHT BY PLAINTIFF UNDER FMLA AND TITLE VII.

A fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Hensly v. Eckerhart*, 461 U.S. 424, 437, 76 L. Ed. 2d 40, 103 S.Ct. 1933 (1983).

The fee determination involves the following steps:

(A)  Determination of whether Plaintiff is the prevailing party.[5]

(B)  Determination of the "lodestar" (hours times rate).

(C)  Determination of whether to adjust the lodestar.

*See Hensley v. Eckerhart*, 103 S.Ct. at 1939-40.

The jury verdict demonstrates that Plaintiff is the prevailing party satisfying Section (A). As to (B), the recorded hours of Plaintiff's counsel are not duplicative and are appropriate for a case of this type, as are the rates requested, which, as shown by the supporting affidavits, are entirely within the ambit of the case law. As to (C), and because of the nearly two (2) year delay in full payment, the lodestar should be increased by the applicable judicial interest rate.

### A.  Prevailing Party.

A plaintiff is considered a "prevailing party" if she "succeed[s] on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 103 S.Ct. at 1939, (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-279 (1st Cir. 1978). In this case, the jury returned a verdict finding for Plaintiff on all claims.[6] Accordingly, Plaintiff is a "prevailing party."

---

[4] The Supreme Court has noted that the law regarding fee awards under 42 U.S.C. Section 1988 is by analogy applicable to Title VII discrimination cases. *Blanchard v. Bergeron*, 109 S. Ct. 939, 943 (1989).
[5] As shown above for purposes of FMLA, Plaintiff does not have to show that she is a prevailing party, however in this case, she is.
[6] Rec. Doc. 63.

4

### B. Lodestar: Hours Times Rate

The Supreme Court has indicated that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This is the "lodestar." *Blanchard v. Bergeron*, 109 S. Ct. 939, 943 (1989); *Hensley v. Eckerhart*, 103 S.Ct. 1933, 1939 (1983); *Riley v. City of Jackson,* 99 F.3d 757 (5th Cir. 1996).

#### 1. Hours

An itemization of the legal services rendered by Plaintiff's counsel is attached hereto as Exhibit "A." In reviewing the time entries of Plaintiff's counsel, this Court should determine whether the time spent was reasonable.[7] As one court stated:

> "The relevant issue, however, is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures. *Woolridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990)."

*Grant v. Martinez*, 59 FEP Cases 1227, 1229 (2nd Cir. 1992).

The Fifth Circuit suggests that the Court should not engage in a hypertechnical review of the time entries if counsel's time entries are adequate to determine whether counsel billed reasonable hours. *Hollowell v. Orleans Regional Hospital, L.L.C.*, 217 F.3d 379 (5th Cir. 2000).[8] In *Hollowell*, the Fifth Circuit rejected an attack on a statutory fee award on the basis that counsel "lumped" time entries by grouping tasks performed into a single time entry. The Court further stated "[e]ven a failure to provide contemporaneous billing statements 'does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours.'" *Id.* at note 18, citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th

---

[7] Indeed, this is the only inquiry for FMLA recovery.

Cir. 1995). Here, Plaintiff's counsel has done their best to avoid these issues. Plaintiff's counsel record their time daily, contemporaneously with the work performed. In fact, Plaintiff's counsel, Ms. Allison A. Jones, routinely reminds herself and other counsel in her office to "Say your prayers before you go to bed, but make sure your time sheet is recorded accurately first." Plaintiff's counsel law firm inputs this recorded time into LEAP, a computer program for legal billing. At the end of each month, the firm and assigned counsel review client bills for accuracy, duplication and exercise billing judgment by deleting certain entries before sending the same to the client.

In order to ensure that all time entries were properly prepared for this Court's review, with the assistance of legal assistant, Jessica Hopkins, Plaintiff's counsel used a printout of LEAP of all time and expenses sent to the client, to create the EXCEL spreadsheet. Counsel then coded the spreadsheet to reflect the rate and amounts sought and the total hour and amounts billed by each provider. Counsel then reviewed the entries and deleted entries for review of short documents, transmitting or filing documents, entries that appeared to be erroneous or excessive and entries that counsel simply chose to waive in a *second exercise of billing judgment*. Counsel then edited the wording of certain entries on the Spreadsheet for purposes of clarification and grammar and to redact certain privileged information. Counsel then used the Spreadsheet to create a Word document, which was converted to PDF and then attached hereto as Exhibit "A."

In the case at bar, scrutiny of time entries shows that the fee is reasonable and that there is a lack of duplication. Rarely were two lawyers needed for any task, and, even when this did occur, the time was utilized efficiently. For example, the time entries pre-Complaint were all time entries for counsel, Allison A. Jones, the generating attorney, with one exception. Ms. Pamela Jones' only 2024 time entry was on March 21, 2024 as she was asked by Ms. Allison A.

---

[8] *See also, Neely v. Regions Bank Inc.,* 262 F. App'x 630, 632 (5th Cir. 2008).

Jones to review and revise the draft Complaint that needed to be timely filed given the issuance of the Notice of Right to Sue. Ms. Pamela Jones was asked to do this because Ms. Allison A. Jones was primary counsel on another case that was being heavily litigated, and she determined that it was necessary that the Complaint be received by the client in time for her to sufficiently review the same and to ensure that all claims were asserted before filing and prior to the applicable prescriptive period.

After the matter was filed, Ms. Allison A. Jones also requested an associate at her law firm, Zachary B. Mayfield, to assist with discovery in this matter. Ms. Allison Jones obtained client approval for Mr. Mayfield's assistance. Associates at Plaintiff's counsel's firm are routinely used in drafting discovery and initial disclosures and sporadic legal research due to their lower hourly rate which benefits the client in reduced billing. After Mr. Mayfield's initial assistance with discovery and initial disclosures, he also assisted in the lead-up to trial by performing legal research and drafting a Motion for a Judgment as a Matter of Law which was anticipated to be necessary at trial.

Other than these few time entries, by Ms. Pamela Jones and Mr. Zachary Mayfield, there is no entry for any other attorney until Marcus Sandifer began aiding Ms. Allison A. Jones on January 22, 2025 (less than seven days after the second Settlement Conference ordered by the Court was held by Magistrate Judge North).[9] Given that Ms. Allison A. Jones is 63 years old, that the deadlines in this case were being set in quick fashion with a trial date in less than one month to be held out of town, it is entirely reasonable that Plaintiff would want additional counsel to assist to prepare pretrial motions, respond to the same, draft proposed jury instructions, work on witness examinations, attend trial, listen to testimony, observe the demeanor of witnesses and jurors, consider objections and responses to objections, assist in the

preparation of witnesses and formulation of arguments, assist with communication with the client and coordination of witnesses at trial and otherwise engage in the myriad activities required to try a case from start to finish. *See, Holmes v. Reddoch*, 2024 U.S. Dist. LEXIS 220043, at *12-13 (E.D. La. Dec. 4, 2024). Indeed, Plaintiff notes that Defendant, Mignon Faget, likewise had two counselors present throughout the trial.

After trial, on February 23, 2025, Ms. Allison A. Jones requested that Ms. Pamela Jones draft the motion for liquidated damages which Ms. Allison A. Jones knew would need to be filed soon after the jury verdict, as during that time Ms. Allison A. Jones needed to get caught up on her other cases pending in federal court given that she had been out of her office in trial for over a week.

Even after January 22, 2025, when additional counsel worked on the case, a review of the time entries shows that all counsel were careful to properly record their time and to avoid duplication beyond which is reasonably expected. As observed the Seventh Circuit:

> "It is fair to judge a pudding by the eating, and fair to judge litigation decisions by their results. The use of two (or more) lawyers, which solvent clients commonly pay for because they believe extra help beneficial, may well reduce the total expenditures by taking advantage of the division of labor. The results in this case suggest that this benefit has been realized."

*Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988).

Moreover, as shown above, prior to submitting this fee application, Plaintiff's counsel exercised a second "billing judgment" by eliminating several detailed time entries for which they do not seek compensation. Specifically, counsel for Plaintiff has limited requested time entries to those time entries demonstrated to be directly attributable only to the pursuit of a claims under FMLA and Title VII. Because counsel and staff were careful not to record time spent that they could not fully justify, these deletions were fairly few.

---

[9] Rec. Doc. 28.

In sum, counsel submits that all work performed was reasonable and necessary to ensure success.

"The relevant issue, however, is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures. *Woolridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990)."

*Grant v. Martinez*, 59 FEP Cases 1227, 1229 (2nd Cir. 1992). And here, the proof is in the pudding. After a nearly four-day jury trial, Plaintiff prevailed on all claims. While, the Supreme Court has expressly rejected the idea that fees should be proportionate to the amount of monetary damages recovered, *City of Riverside v. Rivera*, 106 S.Ct. 2686 (1986) and the Fifth Circuit has "previously declined to adopt a rule of proportionality between damages and attorney's fees." *Hollowell v. Orleans Regional Hospital, L.L.C.*, 217 F.3d 379 (5th Cir. 2000), the fees sought in this case are proportionate to the damages awarded by the jury.

2. Rate

In the Fifth Circuit, to determine a reasonable fee, the district court must consider the 12 factors enumerated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) in a 3-step process: "(1) ascertain the nature and extent of the services supplied by the attorney; (2) value the services according to the customary fee and quality of the legal work; and (3) adjust the compensation on the basis of the other <u>Johnson</u> factors that may be of significance in the particular case." *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990).

Plaintiff's attorneys and staff charged fees according to the following hourly rates:

(a)    Allison A. Jones - $365.00 for out of court work and $400.00 for trial work;

(b)    Pamela R. Jones - $350.00 for out of court work;

(c)    Marcus D. Sandifer - $225.00 for out of court work and $260.00 for trial work;

(d)    Zachary B. Mayfield - $200.00 for out of court work; and

    (e)    Paralegals and/or Legal Assistants - $95.00 for out of court work

The 12 factors identified in *Johnson* which this Court should consider are:

    a)    <u>The time and labor required</u>.  Under the *Johnson* standards, the minimum award should generally be not less than the number of hours claims times the attorneys' regular hourly rate, though the Court remains free to determine the appropriate hourly rate to be paid to an attorney with the skill and experience of Plaintiff's counsel and to determine the number of hours which should be required to completely prepare for and try a case of this type. Labor and employment cases are time intensive. This is especially true when the Defendant, Mignon Faget, Ltd., initially refused to settle the case pre-suit. As such, Plaintiff was required to submit a charge to the EEOC, submit to an interview with an EEOC investigator, and engage in an EEOC mediation. That mediation failed and as a result, Plaintiff requested a Notice of Right to Sue and filed suit on April 26, 2024. After initiating litigation, Plaintiff had to perpetuate discovery on all issues including, FMLA coverage and eligibility and liability under either FMLA or Title VII or, as shown by the jury verdict, both. Even then, discovery was hard fought. Throughout the litigation, Defendant consistently denied coverage under FMLA and continuously denied liability under all statutes rejecting realistic settlement discussions in two settlement conferences ordered by the Court. Plaintiff's counsel judiciously used her time narrowly tailoring Request for Admissions and other written discovery and limited her depositions to only the four witnesses necessary for trial (Ms. Oroizi, Mr. Cope, Ms. Gasser and Ms. Deville), who all testified at trial. As such, these transcripts cost for the same were "necessarily obtained for use in this case" 28 U.S.C. § 1920(2).

Finally, as noted above, Plaintiff's counsel, Ms. Allison A. Jones, only brought in other lawyers when necessary. It is undisputed that case was litigated at trial for four (4) days, and the

Defendant put up a vigorous defense to Plaintiff's claims which required Plaintiff's counsel to respond likewise. Here, Plaintiff submits that counsel efficiently and concisely prepared the case and expended as few hours as possible to competently litigate this case. The time and labor reflected in the attached billing sheets are easily within reason, and fees requested as a result of same should be awarded.

      b)    <u>The novelty and difficulty of the questions</u>.  This case involved many technical and complex issues including issues related to the interpretation the statutory schemes and burden shifting for FMLA and Title VII claims. While FMLA claims are not particularly novel or difficult on their face, there in limited case law interpreting provisions of the FMLA and much of the law is conflicting or intertwined with other types of cases, such as claims arising under Title VII. Thus, litigation by FMLA claims poses some novel and difficult questions due to a clear lack of controlling guidance on the issues. Moreover, both FMLA and Title VII cases require substantial skill to litigate in light of the emotional nature of the cases. As to "difficulty," the nature of any employment discrimination case means difficulty by definition. The victims of discrimination are understandably upset; likewise, defendants in these cases work hard as to not be labeled discriminatory. The work necessary to prepare the case for prosecution and for trial is, thus, made more difficult. The axiom among plaintiff lawyers, that "civil rights cases are different" is a truism. This was a civil rights case. Needless to say, it was a difficult fight.

      c)    <u>The skill required to perform the legal services properly</u>.  Exceptional knowledge and skill were required to handle the problems and issues which arose in this case. Plaintiff's counsel, Ms. Allison A. Jones, has considerable experience in this area. *See* Exhibit "C." Plaintiff's counsel was able to use her forty (40) years of experience in civil rights litigation to successfully try this case to jury verdict. Counsel's experience and skill also enabled her to

11

recognize nuances in the law and to design an effective strategy to defeat Defendant's multiple attempts to defeat this action.

   d)  <u>The preclusion of other employment</u>.  Given this Court's rather shortened scheduling order, substantial time was devoted by Plaintiff's counsel which precluded her from rendering services to other clients. Indeed, many of the issues which arose in this case were handled on an expedited and contested basis. Because of the substantial time and energy devoted to these matters, Plaintiff's counsel was not able to render services to her other clients at various times. Indeed, Plaintiff's counsel had to juggle many federal court cases during this time and she was criticized by one particular federal judge for not prioritizing his case as a result of her dedication to this case.[10] Preclusion of other employment was particularly apparent during the week of trial when Plaintiff's counsel was required to work out of town and was unable to work on any other matters.

   e)  <u>The customary fee</u>.  The Supreme Court has counseled that in computing statutory fee awards in civil rights cases, counsel for the prevailing party should be paid for all of their time just as they would be if compensated by a fee-paying client. *Blanchard v. Bergeron,* 109 S.Ct. 939, 943 (1989). In this case, Plaintiff's counsel seeks her customary rate (maximum rate of $365.00 for out of court work and $400.00 for trial work) which she charges to fee-paying clients. Pamela R. Jones' customary rate is $350.00. Marcus D. Sandifer's customary rate is maximum rate of $225.00 for out of court work and $260.00 for trial work. Zachary B. Mayfield's customary rate is $200.00 for out of court work.[11] The hourly rates are within the range of hourly rates range previously approved by this Court. *See, Holiday Inn Club Vacations Inc. v. Wisznia Co.,* 2025 U.S. Dist. LEXIS 54705, at *6 (E.D. La. Mar. 25, 2025) (finding

---

[10] *See Molosso v. Board of Supervisors*, 3:23-CV-00567, Western District of Louisiana. (R. Doc. 56 therein).

hourly rates ranging from $240-$665 to be reasonable); *see also*, *DirecTV, LLC v. Ertem*, 2015 U.S. Dist. LEXIS 12640, at *8 (E.D. La. Feb. 3, 2015) ($250/hour for associates and $95/hour for paralegals or legal assistants are reasonable).

The Fifth Circuit has given the term "customary fee" a broad interpretation and has condemned the practice of using the local rate as a ceiling because it constituted a failure to consider the other *Johnson* factors.

> "*Johnson* does not permit a district court to translate its notion of a customary fee into an inflexible maximum. Congress intended 'that the amount of fees awarded under [Section 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature.' *Knighton v. Watkins*, 616 F.2d 795, 800 (5th Cir. 1980)."

*Neely v. City of Grenada*, 624 F.2d 547, 549 (5th Cir. 1980). Defendant, Mignon Faget, has stipulated, in part, to the hourly rates sought by Plaintiff's counsel.[12] Where the non-moving party does not oppose the hourly rate, that rate is "*prima facie* reasonable." *Islamic Ctr. Of Miss. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989).

    f)    <u>Whether the fee is fixed or contingent</u>.  The fees requested in this case were partially contingent as it depended on Plaintiff's recovery. In *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), Judge Rubin emphasized the importance of a contingency factor in cases involving civil rights litigation:

---

[11] Affidavits from Pamela Jones, Marcus Sandifer, and Zachary Mayfield averring to their customary hourly rate and years of experience are attached hereto as Exhibits D, E, and F, respectively.

[12] See, Exhibit G attached hereto email from Chelsea Cusimano dated April 21, 2025 wherein counsel for Defendant stated that it would stipulate to Plaintiff's counsels' hourly rates. Nevertheless, at 3:30p.m., on the required filing date of this motion, Defendant stated that they would not stipulate to Ms. Allison Jones and Mr. Sandifer's trial rate, only their out-of-court rate. Defendant was provided with Plaintiff's attorney's fees and rate on March 31, 2025, consistent with this Court's deadline, but for unbeknownst reasons, Defendant waited until the afternoon of the date of filing to note their belated objection. Due to the extenuating circumstances caused solely Defendant, Plaintiff will seek to leave to file affidavit(s) from other attorney's not associated with Plaintiff's counsel's law firm to show reasonableness of their rates. Defendant has indicated that it will not object to Plaintiff's motion for leave to file these affidavits. At this time, counsel for Plaintiff and counsel for Defendant are still attempting to come to a stipulation.

> "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful that those who are assured of compensation regardless of the result. This is neither less nor more appropriate in civil rights cases. The standard of compensation must enable counsel to accept apparently just causes without awaiting sure winners."

Such a sentiment is clearly consistent with the premise of 42 U.S.C. Section 20003-5(g)(2)(B) and the furtherance of civil rights litigation. Plaintiff has been billed and paid one-half (½) of her counsel's standard hourly rate. Pursuant to Plaintiff's contract with counsel, the remaining fee owed to Plaintiff's counsel is 20% of the total gross recovery.

g) <u>Time limitations imposed by the client or circumstances</u>. Inherent in any litigation are time limitations. This is particularly true in federal courts. While this case did not merit or require many expedited matters, time limitations were imposed by this Court's deadlines and Scheduling Order, as with all litigation in federal courts. In this case, the Court's scheduling order required quick responses to deadlines, and Plaintiff's counsel was responsive and timely regarding the same.

h) <u>The amount involved and the results obtained</u>. The degree of success obtained is the most important *Johnson* factor. *Abner v. Kansas City So. Ry. Co.*, 541 F.3d 372, 376-77 (5th Cir. 2008) (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)). The amount involved in this case was "priceless." At issue was Plaintiff's belief that gender and protective activities of requesting FMLA leave had played an illegal motivating factor in the Defendant's decision-making process. No amount of money can ever quantify the satisfaction Plaintiff received when her belief was vindicated by a jury's verdict. In the case at hand, the Defendant launched an aggressive attack on Plaintiff's claims, primarily attempting to paint Plaintiff as lazy to the jury. This required Plaintiff to fight back hard.

The most important benefit, of course, is the important message sent to businesses generally, regarding gender-based treatment and compliance with FMLA, a message which may well be heeded by other in the Louisiana community and environs.

> "[T]he violation of an important public policy may involve little by way of actual damages, so far as a single individual is concerned ... If a defendant may feel that the cost of litigation, and, particularly, that the financial circumstances of an injured party may mean that the chances of suit being brought, or continued in the face of opposition, will be small, there will be little brake upon deliberate wrongdoing. In such instances public policy may suggest an award [of legal fees] that will remove the burden from the shoulders of the plaintiff seeking to vindicate the public right.' *Knight v. Auciello*, 1 Cir. 1972, 453 F.2d 852, 853."

*Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 584 (5th Cir. 1980).

i) <u>The experience, reputation and ability of the attorney</u>. Plaintiff's counsel possessed the requisite skill, knowledge and ability to adequately represent Plaintiff in this case. *See* Exhibit "C." This case presented the complex issues of fact and law. Ms. Cox had a case. She had the type of case that few lawyers have the expertise to litigate. Indeed, because of the scarcity of lawyers who do not take these types of cases, many injured parties are denied justice. If justice was to be served, in the civil context, she had to have someone do the job. Without the work of Plaintiff's counsel and her firm, Plaintiff's claim, significant in a societal sense as well as to the Plaintiff personally, would obviously not have been brought to fruition.

j) <u>The "undesirability" of the case</u>. Because of the required commitment of time to this proceeding and the partially contingent nature of the fee arrangement, this case can be characterized as an undesirable one.

k) <u>The nature and length of the professional relationship</u>. This factor considers the attorneys' relationship with the client to determine the hourly fee. Attorneys who perform services for a given client on several different cases over several years may charge a lower hourly rate because they benefit from a steady client with steady income on a monthly basis.

This arrangement is beneficial to the attorney since there is no delay in payment and there is assurance of future income from the client. In the present case, however, Plaintiff's attorneys have represented her only on this claim, and there is no agreement or expectation of a future legal relationship with the Plaintiff. As such the rates charged are appropriate.

l) <u>Awards in similar cases</u>. As the Defendant does not challenge the hourly rates sought, in part, this Court should conclude the that hourly rates are reasonable.[13] See, *Islamic Ctr of Miss,* 876 F. 2d at 469. The hourly rates charged are consistent with rates that have been found to be reasonably by this Court. *See, Holiday Inn Club Vacations Inc. v. Wisznia Co.,* 2025 U.S. Dist. LEXIS 54705, at *6 (E.D. La. Mar. 25, 2025).

### C. Adjustments to Lodestar

Counsel in this case should be compensated above their lodestars, especially considering there has been a more than two-year delay in full payment. To rule otherwise will discourage competent counsel from representing plaintiffs, which defeats the purpose of the attorneys' fees provision of the civil rights statutes.

An increase in the lodestar sum for the delay (or for whatever *Johnson* factor this Court may wish to consider, except contingency), would seem completely fair and reasonable. Otherwise, why would anyone take on a case where (<u>if</u> victorious) payment would be delayed until the end of the litigation? This Court should increase the lodestar by the judicial interest rate applicable in the State of Louisiana, which is currently 8.25%. *See* La. Civ. Code art. 2924 and La. R.S. 13:4202.

### III. EXPENSES

In *Missouri v. Jenkins*, the Supreme Court defined "reasonable fees" to include not only the work of the of the attorneys, "[b]ut also of secretaries, messengers, librarians, janitors and

others whose labor contributes to the work product for which an attorney bills his/her client; and it must also take account of other expenses and profit." 491 U.S. 274, 285 (1989). The Court also referred to the "self-evident proposition that the 'reasonable attorney's fee' provided should compensate the work of paralegals ...". *Id*. at 2470. Further, the Fifth Circuit has confirmed the notion that all reasonable out-of -pocket expenses, including costs attributed to "photocopying, paralegal assistance, travel and telephone are recoverable in Section 1988 fee awards." *Associated Builders & Construction v. Orleans Parish School*, 919 F.2d at 380 (1990).

29 U.S.C. § 2617(a)(3) requires that "The Court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorneys' fee, reasonable expert witness fees, *and other costs of the action to be paid by the defendant*." Title VII is in accord. Normally, reasonable out of pocket expenses incurred by an attorney which would typically be charged to a fee-paying client are included in statutory award of fees. *West Virginia Univ. Hosps, Inc. v. Casey*, 499 U.S. 83, 87 n.3, 113 L. Ed. 2d 68, 111 S. Ct. 1138 (1991). Such expenses routinely include costs for long-distance telephone calls, facsimiles, express mail and postage, messenger services, and reasonable travel expenses. Recognizing that fee statutes generally provide for recovery of costs "ordinarily billed to the client" and reasonable photocopying expenses are recoverable. Accordingly, the Plaintiff lists her expenses as follows (*See* Exhibit "B" for itemization of expenses and back up):

**EXPENSES CURRENT THROUGH 4/17/2025**

| Date | Description | Amount |
| --- | --- | --- |
| 3/7/2023 | Postage/Certified Mail | $24.30 |
| 8/8/2023 | Fax | $2.00 |
| 8/15/2023 | Postage/cert. mail | $17.06 |
| 1/26/2024 | The Notary Shoppe (Employment Contract) | $20.00 |
| 1/26/2024 | The Notary Shoppe (Affidavit for Complaint) | $25.00 |
| 4/26/2024 | Court Fee-LA Eastern District Court | $405.00 |

---

[13] See footnote 12.

| Date | Description | Amount |
|---|---|---|
| 10/2/2024 | The Notary Shoppe (Affidavit for Discovery Responses) | $20.00 |
| 1/9/2025 | Photocopies/Pretrial Order | $11.50 |
| 1/9/2025 | Transcript- Professional Shorthand Reporters, Inc - Inv 205410-Shelby Webb Cox | $759.50 |
| 1/13/2025 | Photocopies/Court minute entries | $2.00 |
| 1/22/2025 | Photocopies/Depo notices of def employees | $4.00 |
| 1/22/2025 | Photocopies/Exhibits | $332.50 |
| 1/23/2025 | Photocopies/Joint Pretrial Order Amended draft | $19.00 |
| 1/23/2025 | Photocopies/Joint Pretrial Order Final | $9.50 |
| 1/23/2025 | Photocopies/Various exhibits | $19.00 |
| 1/23/2025 | Photocopies/Joint Amend Pretrial Order | $9.50 |
| 1/29/2025 | Choice Copy Service Inv-1102397 | $410.52 |
| 1/29/2025 | Photocopies/List of Exhibits | $7.00 |
| 1/30/2025 | Transcript- Professional Shorthand Reporters, Inc- Inv-205443-Nicholas Cope and Nancy Gasser | $956.25 |
| 1/31/2025 | Transcript- Professional Shorthand Reporters, Inc- Inv-205444-Maghan Oroszi & Sami Deville | $1,112.50 |
| 1/31/2025 | Travel -Aloft New Orleans, Room 1248- 1/29/25-1/31/25 | $348.78 |
| 2/3/2025 | Photocopies/Draft Supp Conf Med | $4.00 |
| 2/4/2025 | Transcript- Professional Shorthand Reporters, Inc-Inv-205455-Nicholas Cope & Nancy Gasser | $1,825.96 |
| 2/4/2025 | Photocopies/Supplemented Conf Med Statement | $14.50 |
| 2/4/2025 | Photocopies/Trial prep | $60.00 |
| 2/5/2025 | Photocopies/Trial prep | $481.00 |
| 2/6/2025 | Photocopies/Joint Amended Exhibit List Draft | $10.50 |
| 2/6/2025 | Photocopies/Trial prep | $52.00 |
| 2/7/2025 | Photocopies/Trial prep | $32.00 |
| 2/9/2025 | Photocopies/Trial prep | $9.00 |
| 2/10/2025 | Photocopies-Choice Copy Service Inv-1102423 | $2,373.06 |
| 2/13/2025 | Photocopies/Exhibit & Exhibit list | $20.00 |
| 2/14/2025 | Photocopies/Trial Prep | $228.00 |
| 2/15/2025 | Photocopies/Trial prep | $247.00 |
| 2/16/2025 | Photocopies/Trial prep | $20.00 |
| 2/17/2025 | DocuMart Inv-468078 - Court Exhibit Binders | $702.38 |
| 2/17/2025 | Transcript- Professional Shorthand Reporters, Inc- Inv 205501- Maghan Oroszi & Samantha Deville | $2,226.46 |
| 2/18/2025 | DocuMart - Inv 468133 - foam core sign | $101.78 |
| 2/20/2025 | FedEx - Tracking # 817609665704 | $23.34 |
| 2/20/2025 | DocuMart 2604 | $32.80 |
| 2/20/2025 | DocuMart 2604 | $24.02 |
| 2/21/2025 | Travel- Intercontinental, New Orleans- 2/16/2025-2/21/2025-AAJ | $1,237.83 |

| Date | Description | Amount |
|---|---|---|
| 2/28/2025 | FedEx-Tracking#817609665690 | $23.24 |
| 2/28/2025 | Miles-Round trip to New Orleans: 1/9-13/25; 1/29-31/2025; 2/16-21/2025 | $1,373.40 |
| 3/17/2025 | Photocopies/Joint Motion | $1.00 |
| 3/18/2025 | Photocopies/Order | $1.00 |
| 3/18/2025 | Photocopies/Application w/ memo | $5.00 |
| 3/19/2025 | Photocopies/Order | $1.50 |
| 3/26/2025 | Photocopies/Oppos to Application | $5.00 |
| 4/17/2025 | Sammantha Ann Morgan, RPR, CCR | $1,663.75 |
| | **Totals:** | **$17,314.43** |

These are expenses that were billed to the client and, as such, they are necessarily included in the calculation of reasonable attorneys' fees. Exhibit "B" attached, contains the invoices or pertinent documentations grounding these expenses.

## IV.    **CONCLUSION**

Counsel has shown through the attached affidavits and this supporting memorandum that the hours, rates and factors respecting this matter, substantiate the following attorneys' fees request and that the costs shown are appropriate to this litigation:

```
Allison A. Jones            365.00 X 273.50 hours =      $ 99,827.50
Allison A. Jones            400.00 X 46.50 hours =       $ 18,600.00
Pamela R. Jones             350.00 X 7 hours =           $  2,450.00
Marcus D. Sandifer          $225.00 X 123.90 hours =     $ 27,877.50
Marcus D. Sandifer          $260.00 X 46.50 hours =      $ 12,090.00
Zachary B. Mayfield         $200.00 X 18.00 hours =      $  3,600.00
Paralegals and/or
Legal Assistants            $95.00 X 33.10 hours =       $  3,144.50

TOTAL LODESTAR:                                          $167,589.50

Enhancement
2024 - 8.75% (4/26/24 - 12/31/24 = 250 days @ $40.18 per day)   $ 10,044.31
2025 – 8.25% (1/1/25 - 4/22/25 = 112 days @ $37.88 per day)     $  4,242.72

Total Enhanced Lodestar                                  $181,883.51
Expenses                                                 $ 17,314.43

GRAND TOTAL                                              $199,197.94
```

If necessary, Plaintiff requests that a hearing be held to determine all disputed factual issues, which would allow Plaintiff's counsel an opportunity to explain any questions which the Court may have which cannot be anticipated, and to rebut or cross-examine any evidence presented by Defendant. Plaintiff is entitled to a hearing when there is a disputed factual issue. However, although a hearing is requested, such is not mandated. *See Doyle v. United States*, 817 F.2d 1235, 1237 (5th Cir. 1987) (a judge may rely upon unopposed affidavits and is not required to hold hearings to set attorneys' fees.) See also *Sorola v. City of Lamesa*, 808 F.2d 435, 437 (5th Cir. 1987).

For the reasons stated above, the Plaintiff requests that the Court direct an award of attorneys' fees and costs against the Defendant in this action as requested.

Respectfully Submitted,

DOWNER, JONES, MARINO & WILHITE
401 Market Street, Suite 1250
Shreveport, LA 71101
Tel: 318-213-4444
Fax: 318-213-4445
e-mail: ajones@dhw-law.com
e-mail: msandifer@dhw-law.com

*/s/ Allison A. Jones*
Allison A. Jones, Bar No. 16990, T.A.
Marcus D. Sandifer, Bar No. 39326
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of April, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

*/s/ Allison A. Jones*
OF COUNSEL