## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

SHELBY WEBB COX                                  CIVIL ACTION

VERSUS                                                    No. 24-1068

MIGNON FAGET, LTD                                   SECTION I

## ORDER AND REASONS

Before the Court is a renewed motion for judgment as a matter of law filed by

defendant Mignon Faget, Ltd. ("defendant").[1]  Plaintiff Shelby Webb Cox ("plaintiff")

filed a response in opposition.[2] Defendant filed a reply.[3] For reasons set forth below,

the Court grants the motion in part and denies the motion in part. The Court grants

the motion only with respect to defendant's request to reduce the jury's award of back

pay. Otherwise, the Court denies the motion.

## I. BACKGROUND

Plaintiff worked as defendant's employee and served in multiple positions

during the course of her employment.[4] In September 2021, plaintiff was promoted to

the web manager position, her final position in defendant's employ.[5] In her complaint,

plaintiff alleged that she notified defendant in early February 2023 that she intended

---

[1] R. Doc. No. 71. Since the original briefing in connection with the instant motion did
not cite to the trial transcript, the Court ordered the parties to file supplemental
memoranda with appropriate citations. *See* R. Doc. No. 78. In compliance with the
Court's order, the parties filed supplemental memoranda with appropriate citations.
*See* R. Doc. No. 90 (defendant's supplemental memorandum in support). For ease and
simplicity, the Court will cite only to the supplemental memoranda.
[2] R. Doc. No. 74; R. Doc. No. 87 (supplemental opposition).
[3] R. Doc. No. 76; R. Doc. No. 89 (supplemental reply).
[4] R. Doc. No. 1, ¶ 12.
[5] *Id.*

to take leave as provided by the Family Medical Leave Act ("FMLA") for her childbirth and recovery therefrom.[6] Approximately one week later in February 2023, plaintiff was notified that defendant terminated her employment.[7]

Plaintiff subsequently filed a complaint that alleged several causes of action: pregnancy discrimination in violation of Title VII, 42 U.S.C. § 2000e-2; pregnancy discrimination in violation of Louisiana Revised Statute § 23:342; FMLA interference in violation of 29 U.S.C. § 2615(a)(1); and FMLA retaliation in violation of 29 U.S.C. § 2615(a)(2). Plaintiff's prayer for relief included damages for lost wages and benefits, compensatory damages, and punitive damages.[8]

After a four-day trial,[9] the jury returned a verdict in favor of plaintiff on all claims.[10] With respect to her FMLA damages, the jury found that plaintiff sustained $92,000 of damages in past back pay.[11] However, the jury also found that plaintiff's damages for back pay should be reduced by $39,500 for plaintiff's failure to mitigate.[12] In total, the jury awarded plaintiff $52,500 in back pay. With respect to plaintiff's state and federal damage claims for pregnancy discrimination, the jury awarded plaintiff the same amount in back pay as it awarded plaintiff for back pay in connection with her FMLA claims.[13] In addition, the jury awarded plaintiff $4,000 in

---

[6] *Id.* ¶ 18.
[7] *Id.* ¶ 20.
[8] *Id.* at 8–9.
[9] *See* R. Doc. Nos. 58–61.
[10] R. Doc. No. 63.
[11] *Id.* at 3.
[12] *Id.*
[13] *Id.* at 5.

general damages.[14] Finally, the jury awarded plaintiff $100,000 in punitive damages in connection with her Title VII claim for pregnancy discrimination.[15]

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 50(b) permits parties to file a renewed motion for judgment as a matter of law no later than 28 days after the entry of judgment. "A motion for judgment as a matter of law in an action tried by a jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Thomas v. Hughes*, 27 F.4th 995, 1008 (5th Cir. 2022) (cleaned up). Courts are "wary of upsetting jury verdicts" and so are "especially deferential" to them. *See Warner v. Talos ERT, L.L.C.*, 133 F.4th 412, 424 (5th Cir. 2025). "A party is only entitled to judgment as a matter of law on an issue where no reasonable jury would have had a legally sufficient evidentiary basis to find otherwise." *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 653 (5th Cir. 2019). Accordingly, a Rule 50(b) motion "should only be

---

[14] *Id.*

[15] In accordance with 42 U.S.C. § 1981a(b)(3)(A), the Court subsequently issued, upon joint motion, an order reducing the award of punitive damages to $50,000. *See* R. Doc. No. 67. Since Louisiana law does not provide for punitive damages, *see* La. R.S. § 23:303(A), the punitive damage award was only in connection with plaintiff's Title VII pregnancy discrimination claim.

On this date, the Court held a telephone conference with counsel for both parties regarding § 1981a(b)(3)(A). That statute limits the sum of the awards of compensatory and punitive damages. *See, e.g.*, *Rhines v. Salinas Const. Techs., Ltd.*, 574 F. App'x 362, 365 (5th Cir. 2014). For this reason, the Court inquired whether the punitive damages award should be further reduced by $4,000 to account for the compensatory damages award. The parties informed the Court that they had stipulated that the compensatory damages award would count only toward plaintiff's state-law claim, for which reason § 1981a(b)(3)(A) would not apply to the compensatory damages award.

granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Thomas*, 27 F.4th at 1008 (citation omitted).

When deciding Rule 50(b) motions, courts must ensure that the jury's verdict is "supported by substantial evidence; that is, relevant evidence—more than a scintilla but less than a preponderance—that would cause a reasonable person to accept the fact finding." *See Warner*, 133 F.4th at 424 (internal quotation marks and citation omitted). In evaluating the evidence, courts "credit the non-moving party's evidence and disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* (citation and quotation marks omitted). Accordingly, courts "draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party." *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 291 (5th Cir. 2025) (internal quotation marks and citation omitted). The assessment demanded by Rule 50(b) does not permit courts to weigh the evidence. *See Berry v. United States*, 312 U.S. 450, 452–53 (1941) ("Rule 50(b) . . . has not taken away from juries and given to judges any part of the exclusive power of juries to weigh evidence and determine contested issues of fact."); *Ramsey v. Sheet Pile, L.L.C.*, 130 F.4th 193, 198 (5th Cir. 2025).

### III. ANALYSIS

Defendant seeks judgment as a matter of law with respect to plaintiff's pregnancy discrimination claims,[16] FMLA retaliation claim,[17] and plaintiff's FMLA interference claim.[18] Defendant also seeks judgment as a matter of law with respect to damages.

As to the damages awards, defendant first argues that plaintiff should not be entitled to damages for back pay because of her failure to mitigate. In the alternative, defendant contends that plaintiff's damages in that regard should be further reduced.[19] Second, defendant argues that there was insufficient evidence to support an award of punitive damages in connection with plaintiff's Title VII claim for pregnancy discrimination.[20] The Court will analyze each of defendant's challenges in turn.

### a. Pregnancy Discrimination Claims

As an initial matter, the Court will analyze both plaintiff's Title VII pregnancy discrimination claim and plaintiff's state-law pregnancy discrimination claim pursuant to the same framework. Specifically, the Court will analyze both claims under the framework established by federal caselaw for Title VII claims. This approach is supported by state and federal caselaw. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002) ("Louisiana courts and federal courts applying Louisiana

---

[16] R. Doc. No. 90, at 9–13.
[17] *Id.* at 13–16.
[18] *Id.* at 16–18.
[19] *Id.* at 18–22.
[20] *Id.* at 23–24.

law have routinely looked to federal jurisprudence to interpret Louisiana employment discrimination statutes."); *Cole v. Quality Carriers, Inc.*, No. 23-30556, 2024 WL 937053, at *2 n.1 (5th Cir. Mar. 5, 2024) (stating that both Title VII and Louisiana employment discrimination claims are analyzed under the Title VII framework); *Fugarino v. Milling, Benson, Woodward, LLP*, No. CV 21-594, 2021 WL 3602628, at *2, *2 n.30 (E.D. La. Aug. 13, 2021) (Morgan, J.) (explaining that § 23:342(1) "is Louisiana's equivalent to the PDA," for which reason "the Court would conduct one analysis, cast in terms of Title VII but applicable to Plaintiff's discrimination claims under both Title VII and Louisiana law"); *Suire v. LCS Corr. Servs., Inc.*, 930 So. 2d 221, 224 (La. Ct. App. 2006) (stating that Louisiana pregnancy discrimination claims "follow[] the analysis set forth in federal cases for discrimination under Title VII"). The parties themselves follow this approach.[21]

Defendant proffers three independent reasons for its entitlement to judgment as a matter of law as to plaintiff's pregnancy discrimination claims. First, plaintiff did not rebut each of defendant's legitimate business defenses.[22] Second, plaintiff failed to establish she was treated differently than similarly situated employees.[23] Third, plaintiff's reliance on her subjective belief and temporal proximity is

---

[21] *Id.* at 4–13 (citing and discussing only federal law in connection with plaintiff's pregnancy discrimination claims); R. Doc. No. 87, at 9 n.37 (noting that plaintiff's federal and state pregnancy discrimination claims are "considered together").
[22] R. Doc. No. 90, at 4–8.
[23] *Id.* at 9–10.

insufficient to find intentional discrimination.[24] Each reason fails to establish defendant's entitlement to relief pursuant to Rule 50(b).

### *i. Plaintiff's alleged failure to rebut defendant's legitimate business reasons*

Defendant first argues that it is entitled to judgment as a matter of law with respect to plaintiff's pregnancy discrimination claims because reasonable jurors could not conclude that plaintiff rebutted each of defendant's nondiscriminatory legitimate business reasons.[25] Defendant principally relies on the Fifth Circuit's opinion in *Fairchild v. All American Check Cashing, Inc.*, 815 F.3d 959 (5th Cir. 2016).[26]

In *Fairchild*, the plaintiff filed a Title VII claim of pregnancy discrimination. *See id.* at 963. At the close of plaintiff's case in chief, the district court granted the defendant judgment as a matter of law, and the Fifth Circuit affirmed. *See id.* at 963, 968. It reasoned that, because the plaintiff had not introduced direct testimony of discrimination, the plaintiff could only prove discrimination "if her circumstantial evidence satisfie[d] *McDonnell Douglas*'s burden-shifting framework." *See id.* at 967. To satisfy that framework, the Fifth Circuit explained, the plaintiff had to "put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates" in order to prove that the employer's alleged nondiscriminatory reasons "were a pretext for discrimination." *See id.* at 967–68 (citation omitted). Since the plaintiff had not put forward evidence rebutting each of the defendant's

---

[24] *Id.* at 10–13.
[25] *Id.* at 4–8.
[26] *Id.* at 4.

nondiscriminatory reasons, the Fifth Circuit concluded that the defendant was entitled to judgment as a matter of law. *See id.* at 968.

The *McDonnell Douglas* framework originated in the U.S. Supreme Court's opinion in *McDonnell Douglas Corp. v. Green*, which addressed the order and allocation of proof in a bench trial of a private, non-class action challenging employment discrimination pursuant to Title VII. *See* 411 U.S. 792, 800 (1973). That framework provides an appropriate model for a *prima facie* case of discrimination where the plaintiff relies on circumstantial evidence of discrimination. *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). The *prima facie* showing requires plaintiff to "establish that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances." *Id.* If the plaintiff establishes as much, "the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action." *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016). If the defendant proffers such a reason, the plaintiff, "who always has the ultimate burden, must then produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Id.* (internal quotation marks and citation omitted).

The *McDonnell Douglas* burden-shifting framework serves "only to supply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination." *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 340 (2020). Accordingly, the Supreme Court has taken steps to

limit the applicability of the framework, especially outside of the summary-judgment context. *See Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1552 (2025) (Thomas, J., concurring) (listing the circumstances in which the Supreme Court has proscribed the applicability of the *McDonnell Douglas* framework).

Both the Supreme Court and the Fifth Circuit recognize that the *McDonnell Douglas* framework does not apply to post-trial motions. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–16 (1983); *Adams v. Groesbeck Indep. Sch. Dist.*, 475 F.3d 688, 691 (5th Cir. 2007) ("Post-trial, the [*McDonnell Douglas*] framework becomes moot."); *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 297 (5th Cir. 2024) (same); *White v. Patriot Erectors, L.L.C.*, No. 23-50444, 2024 WL 3935444, at *3 (5th Cir. Aug. 26, 2024) ("Regardless, although Patriot argues at length that White failed to establish a *prima facie* case of discrimination, the *McDonnell-Douglas* framework is not technically applicable at this stage."). Accordingly, defendant's ultimate reliance on the *McDonnell Douglas* framework is misplaced.

In addition to being procedurally inapplicable, the *McDonnell-Douglas* framework, as traditionally conceived and as utilized in *Fairchild*, is substantively inapposite. The traditional *McDonnell Douglas* framework concerns so-called "pretext" cases. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (explaining that the traditional *McDonnell Douglas* framework "governs disparate treatment cases premised on pretext"). Pretext cases "involve discernment of the true reason for the employer's action, which is either legal or illegal." *Smith v. Xerox Corp.*, 602 F.3d 320, 326 (5th Cir. 2010).

However, the traditional *McDonnell Douglas* framework does not apply to so-called mixed-motive cases. *See Ames*, 145 S. Ct. 1540, 1552 ("The Court has also held that the framework does not apply in Title VII mixed-motive cases."); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 260 (1989) (White, J., concurring in the judgment) ("The Court has made clear that "mixed-motives" cases, such as the present one, are different from pretext cases such as *McDonnell Douglas* . . . ."). Mixed-motive cases "involve employment decisions based on multiple factors, or mixed motives, at least one of which was illegitimate and prohibited by statute and one of which may have been legitimate." *Smith*, 602 F.3d at 326. Accordingly, the Fifth Circuit has created a "modified *McDonnell Douglas* approach" in order to adapt the traditional *McDonnell Douglas* framework to mixed-motive cases. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). At the final step of the modified approach, the question is whether "the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic" rather than whether a defendant's reason was pretextual. *See Rachid*, 376 F.3d at 312 (citation omitted); *see also Chapple v. Tex. Health & Hum. Servs. Comm'n*, 789 F. App'x 985, 989 n.3 (5th Cir. 2019).

The reason why the traditional *McDonnell Douglas* framework does not apply to mixed-motive cases is plain. The mixed-motive framework applies where there is evidence that a subject employment decision was in part motivated by a legitimate nondiscriminatory reason. Since plaintiffs in mixed-motive cases need not prove that

each of the defendant's proffered legitimate nondiscriminatory reasons is pretextual, the requirement of the traditional *McDonnell Douglas* framework for plaintiffs to rebut each nondiscriminatory reason is inapposite. *Cf. McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 340 (5th Cir. 2008) ("Because McArdle does not argue this case should be analyzed under a mixed-motive framework, he must produce evidence rebutting all of the defendants proffered nondiscriminatory reasons." (cleaned up) (internal quotation marks and citation omitted)); *Grubb v. Sw. Airlines*, 296 F. App'x 383, 389 (5th Cir. 2008) (describing the mixed-motive test as "less restrictive" than the *McDonnell Douglas* test).

Since the Court, without opposition, instructed the jury as to mixed-motive with respect to plaintiff's pregnancy discrimination claims,[27] the *McDonnell Douglas* framework, as traditionally conceived and as utilized in *Fairchild*, does not govern this case. Further, defendant cites no authority for the proposition that a plaintiff must rebut each nondiscriminatory reason to prevail in a mixed-motive case. Accordingly, defendant is not entitled to judgment as a matter of law with respect to plaintiff's pregnancy discrimination claims on the ground that plaintiff did not rebut each of defendant's nondiscriminatory reasons.[28]

---

[27] R. Doc. No. 62, at 22–23.

[28] The Court notes that, in her opposition, plaintiff fights defendant on its own premises. In other words, plaintiff argues that, at trial, she introduced evidence to rebut each of defendant's nondiscriminatory reasons. *See* R. Doc. No. 87, at 6–9. However, because defendant's argument is contrary to controlling authority and to this Court's jury instructions, which did not instruct the jury that plaintiff needed to rebut each of defendant's nondiscriminatory reasons, the Court will not defer to defendant's legal framework.

*ii. Plaintiff's alleged failure to prove that she was treated differently than similarly situated employees*

Defendant next argues that it is entitled to judgment as a matter of law with respect to plaintiff's pregnancy discrimination claims on the ground that plaintiff did not establish that she was treated differently than similarly situated employees.[29] Although defendant does not cite a case in this section of its argument, it is clear that defendant also bases this argument on the *McDonnell Douglas* frameworks. Relevant here, one of the elements of a *prima facie* case of discrimination under the traditional *McDonnell Douglas* framework is that others similarly situated to the plaintiff but outside the plaintiff's protected class were treated more favorably. *See Saketkoo*, 31 F.4th at 997–98. This showing is likewise required by the modified *McDonnell Douglas* framework applied in mixed-motive cases. *See Rachid*, 376 F.3d at 312 (explaining that, under the modified *McDonnell Douglas* approach, "the plaintiff must still demonstrate a prima facie case of discrimination").

Defendant's reliance on the *McDonnell Douglas* frameworks is again unavailing. "When, as here, a case has been fully tried on its merits, [courts] do not focus on the *McDonnell Douglas* burden-shifting scheme." *See White*, 2024 WL 3935444, at *3 (cleaned up) (citation omitted). Accordingly, "the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is unimportant." *Id.*

---

[29] R. Doc. No. 90, at 9–10. The Court notes that plaintiff asserts, without citation, that defendant has waived this issue and that plaintiff was not required to prove that she was treated less favorably than similarly situated employees. *See* R. Doc. No. 87, at 9–10. Regardless of whether defendant has waived this issue, defendant's argument on this issue fails on its merits.

(citation omitted). "Instead, [courts] inquire whether the record contains sufficient evidence to support the jury's ultimate findings." *Id.* (citation omitted).

The ultimate factual issue in a Title VII case is whether the defendant intentionally discriminated against the plaintiff—*i.e.*, treated the plaintiff less favorably because of a protected characteristic—rather than whether a *McDonnell Douglas* framework was satisfied. *See Aikens*, 460 U.S. at 715 ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant."). The Fifth Circuit has explained that there are two "ultimate elements" of a Title VII discrimination claim: 1) an adverse employment action, (2) taken against a plaintiff because of her protected status. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019). Accordingly, whether a plaintiff was treated differently than other similarly situated employees is not an ultimate factual question with respect to plaintiff's pregnancy discrimination claims.

Since neither the traditional nor modified *McDonnell Douglas* approach applies at this juncture, substantial evidence of a *prima facie* case of discrimination pursuant to that framework is not needed to uphold the jury's verdict. Accordingly, defendant is not entitled to judgment as a matter of law on the ground that plaintiff did not establish that she was treated less favorably than other similarly situated employees.

*iii. Plaintiff's alleged failure to establish intentional discrimination*

Defendant's final argument with respect to plaintiff's pregnancy discrimination claims is that plaintiff did not proffer sufficient evidence of intentional discrimination.[30] Specifically, defendant contends that plaintiff's reliance on the temporal proximity between defendant's learning that she was pregnant and defendant's decision to terminate her employment as well as plaintiff's subjective belief that she was discriminated against do not suffice to support a claim of intentional discrimination.[31]

In support of this argument, defendant "re-urges this Court to find *Fairchild* persuasive."[32] In *Fairchild*, the plaintiff's "only circumstantial evidence" was temporal proximity. 815 F.3d at 967. Moreover, "the record [was] replete with legitimate, non-discriminatory reasons for [plaintiff]'s termination." *Id.* The Fifth Circuit ultimately found that plaintiff did not prove intentional discrimination. *See id.* at 968. It reasoned that "[a]lthough the temporal proximity between the employer learning of the plaintiff's pregnancy and her termination may support a plaintiff's claim of pretext, such evidence—without more—is insufficient." *Id.*

---

[30] R. Doc. No. 90, at 10–13.

[31] *Id.* The Court notes that it instructed the jury that temporal proximity is not enough to prove plaintiff's claims of pretext. *See* R. Doc. No. 62, at 22–23 ("Although the alleged closeness in time between Mignon Faget's learning of Ms. Cox's pregnancy and her termination may support Ms. Cox's claim of pretext, such evidence—without more—is insufficient (citing *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 968 (5th Cir. 2016))).

[32] R. Doc. No. 90, at 11.

In *Fairchild*, the plaintiff did not have any evidence of pretext beyond temporal proximity. Here, to the contrary, plaintiff introduced substantial relevant evidence of intentional discrimination. First, there is more than a scintilla of evidence that defendant knew of plaintiff's pregnancy before the decision to terminate her pregnancy.[33] Most notably, plaintiff elicited testimony from defendant's CEO that, before the opening for plaintiff's replacement was posted, the CEO visited plaintiff's workplace when plaintiff was about five months pregnant.[34] In addition, plaintiff elicited testimony and introduced documentary evidence attesting to plaintiff's good performance,[35] which served to contradict defendant's performance-related reasons for firing plaintiff.

To be sure, defendant introduced evidence tending to show plaintiff's deficient performance.[36] However, at this juncture, the Court is not permitted to weigh the evidence. *See Ramsey*, 130 F.4th at 198. Rather, the Court's role is to ensure that there is more than a scintilla of relevant evidence supporting intentional discrimination. *See Warner*, 133 F.4th at 424. Having reviewed the record, the Court finds that there is more than a scintilla of evidence supporting the jury's finding of intentional discrimination. Accordingly, defendant is not entitled to judgment as a matter of law with respect to plaintiff's pregnancy discrimination claims.[37]

---

[33] R. Doc. No. 87, at 10–11.
[34] *Id.*
[35] *Id.* at 11–14.
[36] R. Doc. No. 90, at 12–13.
[37] The Court also notes that the other case on which defendant relies, *Ontiveros v. Asarco Inc.*, 83 F.3d 732 (5th Cir. 1996), has been effectively abrogated in relevant part. *Ontiveros* stated that "in addition to a finding of pretext, Plaintiff must create a

### b. FMLA Retaliation Claim

Defendant next contends that it is entitled to judgment as a matter of law with respect to plaintiff's claim of FMLA retaliation.[38] Defendant's argument seems to be twofold. First, plaintiff did not rebut each nondiscriminatory reason for terminating her employment.[39] Second, plaintiff did not establish that plaintiff's engaging in FMLA activity was a motivating factor in defendant's decision-making.[40]

In support of its first argument, defendant cites to *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007), which applied the *McDonnell Douglas* framework in a pretext case involving Title VII discrimination. *McCoy* is not inapposite insofar as it concerns a Title VII claim because the traditional and modified *McDonnell Douglas* frameworks apply also to FMLA retaliation claims. *See Houston v. Texas Dep't of Agric.*, 17 F.4th 576, 582 (5th Cir. 2021); *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 529 n.4 (5th Cir. 2021).

However, *McCoy* is inapposite insofar as it is a pretext case. At trial, the Court charged the jury with a mixed-motive instruction with respect to plaintiff's FMLA

---

reasonable inference that national origin was a determinative factor in the actions of which he complains." *Id.* at 734. *Ontiveros* cited the Fifth Circuit's opinion in *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 991 (5th Cir. 1996) (en banc), for this "pretext-plus" standard. *See* 83 F.3d at 734. The Supreme Court rejected this standard in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 n.4 (5th Cir. 2000) ("By its ruling in *Reeves*, the Supreme Court repudiated part of our en banc decision in *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989 (1996). . . . This pretext-plus requirement is contrary to the Court's holding . . . .").

[38] R. Doc. No. 90, at 13–16.

[39] *See id.*

[40] *See id.*

retaliation claim.[41] For this reason, the traditional *McDonnell Douglas* framework, as utilized in *McCoy*, does not govern. Accordingly, as explained above, plaintiff was not required to rebut each of a defendant's legitimate business reasons. Therefore, defendant's first argument for judgment as a matter of law as to plaintiff's FMLA retaliation claim fails.[42]

Second, defendant argues there is insufficient evidence to support a finding that plaintiff taking FMLA leave motivated defendant's decision-making. This argument fares no better. Defendant first points out that defendant provided FMLA leave to other employees.[43] But evidence respecting how defendant treated other employees does not negate plaintiff's evidence that, in her particular case, plaintiff's taking FMLA leave motivated defendant's decision to terminate plaintiff's employment.

Defendant next argues that plaintiff failed to establish pretext because she improperly cited defendant's employee handbook.[44] Defendant cites *Houston v. Texas Department of Agriculture*, for the proposition that a defendant's "failure to follow internal procedures is generally not enough to create a genuine issue of fact as to

---

[41] R. Doc. No. 62, at 20–21.

[42] Plaintiff asserts that she was required to prove only that her taking FMLA leave was a motivating factor in defendant's decision to fire her. *See* R. Doc. No. 87, at 14. Plaintiff also seems to suggest that defendant waived this argument by noting that defendant did not object to the jury charges instructing the same. *See id.* Regardless, defendant's first argument fails.

[43] R. Doc. No. 90, at 14–15.

[44] *See id.* at 15–16. Defendant did not object to the admissibility of the handbook. *See* Joint Ex. 4.

discriminatory motives."[45] 17 F.4th at 583 (cleaned up) (citation omitted). But defendant omits that *Houston* also states that "in some circumstances, when an employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to inferences of pretext." *Id.* (internal quotation marks and citation omitted).

The parties dispute the relevance of defendant's unobjected-to handbook. On the one hand, plaintiff claims that defendant did not follow its progressive disciplinary policy.[46] Plaintiff introduced testimony of another employee of defendant who was reprimanded on several occasions prior to being terminated. On the other hand, defendant emphasizes that the handbook stated that defendant "may" use progressive discipline.[47] It cites *Houston* for the proposition that the use of "may" in the handbook means that failure to follow certain policies does not amount to pretext.[48]

Defendant's reliance on *Houston* does not entitle defendant to judgment as a matter of law. First, even though the handbook used discretionary language ("may"), plaintiff introduced evidence that defendant did follow its progressive disciplinary policy at least at times.[49] Second, regardless of whether the handbook evidence ultimately supports plaintiff's claim, plaintiff also introduced other substantial evidence to prove that plaintiff's taking FMLA leave motivated defendant's decision-

---

[45] R. Doc. No. 90, at 15.
[46] R. Doc. No. 87, at 16.
[47] *See id.*
[48] R. Doc. No. 90, at 16 (citing *Houston*, 17 F.4th at 584).
[49] R. Doc. No. 87, at 16.

making.[50] Accordingly, defendant is not entitled to judgment as a matter of law with respect to plaintiff's FMLA retaliation claim.

### c. FMLA Interference Claim

Defendant also challenges plaintiff's remaining cause of action in this case—*i.e.*, her claim of FMLA interference.[51] In defendant's view, defendant did not interfere with plaintiff's FMLA leave because plaintiff was not entitled to FMLA leave when defendant terminated her employment.[52] Specifically, defendant argues that plaintiff was not entitled to FMLA leave because defendant had already decided to terminate plaintiff's employment for a legitimate business reason long before plaintiff gave notice of her intent to take FMLA leave.[53] In defendant's own words, the "wheels of termination" were in motion by the time plaintiff notified defendant of her intent to take FMLA leave.[54]

An employee's entitlement to FMLA leave is "not unlimited." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 836 (5th Cir. 2020). "Under the FMLA, an employee is only entitled to those rights to which he would have been entitled had he not taken FMLA leave." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021). An employee is not entitled to FMLA leave where his employment is terminated "for legitimate reasons unrelated to his efforts to secure FMLA leave." *See id.* Accordingly, "an employer may challenge [an employee's] entitlement by offering evidence that the

---

[50] *See id.* at 20.
[51] R. Doc. No. 90, at 16–18.
[52] *See id.*
[53] *See id.* at 16.
[54] *See id.* at 17.

employee would have lost his position even had he not taken FMLA leave." *Amedee*, 953 F.3d at 836.

The Court finds that defendant is not entitled to judgment as a matter of law with respect to plaintiff's FMLA interference claim. As to plaintiff's claims of pregnancy discrimination and FMLA retaliation, the Court has already concluded that plaintiff introduced substantial evidence at trial to sustain the jury's verdict with respect to those claims. There is more than a scintilla of relevant evidence supporting the jury's verdict that plaintiff was not terminated for a legitimate business reason unrelated to her taking FMLA leave. As previously stated, the Court finds that plaintiff introduced substantial evidence rebutting defendant's legitimate business reasons for terminating plaintiff's employment.[55] Accordingly, defendant's challenge to the jury's verdict with respect to plaintiff's FMLA interference claim on the ground that plaintiff was not entitled to FMLA leave fails.[56]

### d. Back Pay

In addition to the merits of plaintiff's claims, defendant also attacks the damages awarded by the jury. The jury's damage awards are owed "great deference." *Antero Res., Corp. v. C&R Downhole Drilling Inc*, 85 F.4th 741, 746 (5th Cir. 2023).

---

[55] See R. Doc. No. 87, at 6–9, 12, 20.

[56] Defendant also challenges plaintiff's entitlement to damages for her FMLA interference claim on the ground that plaintiff did not testify that she received benefits from defendant because she was on her husband's health insurance plan. *See* R. Doc. No. 90, at 18. This challenge fails. The FMLA clearly provides for damages equal to the amount of any wages lost by reason of an FMLA violation. *See* 29 U.S.C. § 2617(a)(1)(A). And the jury verdict form and the jury instructions excluded benefits from the damages calculation with respect to the pregnancy discrimination claims and the FMLA claims. *See* R. Doc. No. 62, at 24, 27; R. Doc. No. 63, at 3, 5.

Defendant first challenges the damage award for back pay on the ground that plaintiff failed to mitigate her damages.[57] As a general matter, a plaintiff "must use reasonable diligence to obtain substantially equivalent employment." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003) (internal quotation marks and citation omitted). Although the duty to mitigate damages is placed on the plaintiff, "the employer has the burden of proving failure to mitigate." *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990). Defendant principally argues that plaintiff is entitled to no back pay whatsoever for her failure to mitigate damages.[58] In the alternative, defendant argues that plaintiff should only receive back pay for ten weeks.[59]

### i. Defendant's principal argument

Plaintiff testified that she applied for four jobs between October 2023 and December 2023.[60] Plaintiff testified that she started looking for jobs in October 2023 and that she had not applied for any after December 6, 2023.[61] She further testified that she had not sent her resume out to anybody since that date.[62] Because plaintiff would have been on FMLA leave until June 2023 had she not been terminated, she was not entitled to back pay prior to June 2023.[63]

---

[57] R. Doc. No. 90, at 18–22.
[58] *Id.* at 19–20.
[59] *Id.* at 20–21.
[60] *Id.* at 22.
[61] Day 1 Trial Tr. 102:12–13, 103:1–2, 197:22–24, 199:22–24.
[62] *Id.* 200:3–4.
[63] R. Doc. No. 90, at 19.

Plaintiff argues that she acted with reasonable diligence when searching for substantially equivalent employment because her "prospects were slim."[64] One reason for this assessment is that she believed that she would not receive a positive reference from defendant.[65]

The jury ultimately awarded plaintiff the equivalent of one year of back pay. Plaintiff testified that her annual salary was $52,500.[66] The time between plaintiff's termination and the jury's verdict was almost exactly two years.[67] The jury awarded $92,000 in back pay, which amount represents approximately two years of salary minus the twelve weeks of unpaid FMLA leave that plaintiff intended to take.[68] By deducting $39,500 from that amount, the jury ultimately awarded plaintiff $52,500 or the equivalent of one year of salary.

Defendant's principal argument—that plaintiff is not entitled to back pay whatsoever—fails. In order to prevail on this argument, defendant would have to show that there is no evidence whatsoever that plaintiff used reasonable diligence when seeking substantially equivalent employment. *See West*, 330 F.3d at 393. However, there is substantial evidence that plaintiff did use at least some reasonable diligence in an effort to find substantially equivalent employment insofar as she applied for multiple employment opportunities.[69]

---

[64] R. Doc. No. 87, at 22–23, 25.

[65] *Id.* at 22.

[66] R. Doc. No. 87, at 21.

[67] *Id.*

[68] *Id.*

[69] The Court notes that defendant does not contest that the employment opportunities to which plaintiff applied were substantially equivalent. *See* R. Doc. No 90, at 18–22.

*ii. Defendant's alternative argument*

In the alternative, defendant requests that this Court enter judgment as a matter of law as to a portion of plaintiff's back-pay damages. Specifically, defendant argues that plaintiff is only entitled to back pay for a ten-week period between October 1, 2023 and December 15, 2023, which would correspond to an award of back pay totaling $10,096.15.[70]

The Court finds that defendant is entitled to judgment as a matter of law in this respect. The evidence at trial conclusively shows that plaintiff used reasonable diligence to obtain employment only between October 2023 and early December 2023 when she applied for four jobs. Further, there is no evidence that plaintiff even continued searching for employment after early December 2023. Accordingly, the Court finds that plaintiff only used reasonable diligence to obtain employment between October 2023 and early December 2023 when she testified that she was searching for and did in fact apply for jobs. As a result, the Court finds that plaintiff failed to mitigate her damages with respect to her back-pay claim outside of that period.

There is no evidence in this case that plaintiff searched for or applied for substantially equivalent employment after December 6, 2023. Accordingly, the Court will not allow an award of back pay for dates beyond October 2023 to early December 2023.

---

[70] *Id.* at 20–21.

Plaintiff's responses come to naught. Plaintiff's principal response is that she was "concerned" that she would receive a negative reference from defendant.[71] Plaintiff's own beliefs about her prospects (or lack thereof) do not excuse her duty to mitigate. *See Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 309 (5th Cir. 2020) ("However, Plaintiffs' unilateral decision that their job-seeking efforts would be futile does not absolve them of their duty to mitigate damages." (citing *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1579 n.3 (5th Cir. 1989) (Title VII case))); *Mejia v. Ayala*, No. 21-cv-0587, 2022 WL 3702027, at *2 (N.D. Tex. Aug. 26, 2022) (Title VII case). Accordingly, plaintiff failed to mitigate her damages regardless of whether her beliefs about her prospects would have been validated had she applied for new jobs. Simply put, since plaintiff did not search for or apply for new jobs before or after the period between October 2023 and early December 2023, she cannot recover back pay outside of that period. *West*, 330 F.3d at 393 ("A plaintiff may not simply abandon his job search and continue to recover back pay." (internal quotation marks and citation omitted)).

In addition, plaintiff argues that allowing the jury's award of back pay would be in accord with *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379 (5th Cir. 2003).[72] The analogy seems to be that, in *West*, an award of some back pay was proper even though the award was reduced for the plaintiff's failure to mitigate. Likewise, in this case, the jury found plaintiff failed to mitigate her damages and therefore reduced

---

[71] R. Doc. No. 87, at 25.

[72] *See id.* at 23.

her back pay in part. Accordingly, plaintiff seems to conclude, the jury's award of back pay is proper and so a further reduction of back pay would be inappropriate.[73]  The Court disagrees.

In *West*, the Fifth Circuit limited the time for which the plaintiff could be awarded back pay to a definite period in which, as established by the evidence at trial, the plaintiff used reasonable diligence. But, as it stands now, the jury's award embraces a period longer than that for which there is evidence of mitigation. Therefore, defendant is entitled to judgement as a matter of law reducing the award of backpay to correspond to the ten-week mitigation period between October 2023 to early December 2023. Accordingly, the Court will enter judgment awarding plaintiff $10,096.15 in back pay.[74]

---

[73] *See id.*

[74] Because the Court will enter judgment pursuant to Rule 50(b) as to a portion of the back-pay award, the Court is not required to give plaintiff the option of a new trial as to back-pay damages, even if a right to a jury trial attached to the back-pay issue. Courts can reduce a jury's award of damages either through remittitur or by entering judgment as a matter of law as to a portion of the damages award. *See generally Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 766 (6th Cir. 2008); *see also Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 413 (5th Cir. 2020) (stating that a court may enter judgment as a matter of law pursuant to Rule 50(b) with respect to a portion of the damages awarded by the jury). When a court enters judgment as a matter of law pursuant to Rule 50(b) as to a portion of the jury's damages award, the Court is not required to offer the option of a new trial. *See Wallace v. FedEx Corp.*, 764 F.3d 571, 592 (6th Cir. 2014) ("If [the court] granted the Rule 50(b) motion for judgment as a matter of law, there was no need to offer Wallace the option of a new trial on damages."); *Club 93, Inc. v. First Sec. Bank of Idaho, N.A.*, 178 F.3d 1299 (9th Cir. 1999).

### e. Punitive Damages

Finally, defendant argues that it is entitled to judgment as a matter of law with respect to the jury's award of punitive damages.[75] "An employer is liable for punitive damages in a Title VII action if (1) its agent is employed in a position of managerial capacity, (2) the agent acts within the scope of employment, and (3) the agent acts with malice or reckless indifference towards the federally protected rights of the plaintiff." *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 476 (5th Cir. 2002) (citation omitted). "Ultimately, the terms 'malice' and 'reckless indifference' focus on the actor's state of mind." *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 302 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 168 (2024) (internal quotation marks and citation omitted). "Both pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination . . . ." *Id.* (internal quotation marks and citation omitted). "Thus, the defendant employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable for punitive damages." *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 439 (5th Cir. 2022) (internal quotation marks and citation omitted).[76]

---

[75] R. Doc. No. 90, at 23–24.

[76] Since the punitive-damages inquiry centers on the manager's state of mind, it does not require that the defendant's conduct be especially egregious. *See Smith v. Xerox Corp.*, 602 F.3d 320, 335 (5th Cir. 2010), *abrogated on other grounds by Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ("Nevertheless, a plaintiff need not show the defendant's conduct was especially egregious, as the availability of punitive damages turns on the defendant's state of mind, not the nature of the defendant's egregious conduct." (cleaned up) (citation omitted)).

The standard for punitive damages "is a higher standard than the showing necessary for compensatory damages." *Id.* Accordingly, "[t]here will be circumstances where intentional discrimination does not give rise to punitive damages liability." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999); *see also Wantou*, 23 F.4th at 439 ("[N]ot every sufficient proof of pretext and discrimination is sufficient proof of malice or reckless indifference."). In some instances, an employer may be unaware of the relevant federal prohibition, whereas in others an employer may genuinely belief the discriminatory act was lawful. *See Kolstad*, 527 U.S. at 536–37. "Given these stringent standards, a plaintiff faces a formidable burden in seeking punitive damages for employment discrimination." *Harris*, 92 F.4th at 302 (cleaned up) (citation omitted).[77]

At trial, the parties stipulated that Maghan Oroszi ("Oroszi"), defendant's CEO, was acting in a managerial capacity and that she was doing so while in the scope of her employment.[78] For this reason, the Court will concentrate its review of the record and analysis on Oroszi's testimony and actions. Significantly, Oroszi testified on direct examination that she had knowledge of Title VII's prohibition on employment discrimination and that pregnancy was a protected characteristic

---

[77] Pursuant to federal law, "an employer may avoid vicarious punitive damages liability if it can show that it made good-faith efforts to comply with Title VII." *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 467 (5th Cir. 2013) (en banc). Defendant does not argue that it is entitled to judgment as a matter of law on the basis of its good-faith efforts to comply with Title VII, for which reason the Court will not consider whether defendant made good-faith efforts to comply with Title VII for the purposes of deciding the instant motion.

[78] *See* R. Doc. No. 62, at 31.

pursuant to Title VII.[79] Further, Oroszi testified she understood as much when she made the decision to terminate plaintiff.[80]

The jury had substantial evidence to conclude that Oroszi knew of Title VII's prohibition on pregnancy discrimination and yet discriminated against plaintiff in disregard of the same. Or, in legal terms, there is substantial evidence that Oroszi acted, at the very least, in the face of a perceived risk that her actions would violate federal law.[81] *See Wantou*, 23 F.4th at 439 (upholding jury's award of punitive damages where there was evidence that the defendant's manager knew of the relevant federal prohibition and that the manager engaged in the prohibited conduct); *cf. Mason v. Helping Our Seniors, L.L.C.*, No. 22-51041, 2023 WL 5970941, at *3 (5th Cir. Sept. 13, 2023) (upholding award of punitive damages where manager testified that she knew of relevant federal prohibition on retaliation and district court did not find credible her testimony that she did not retaliate against the plaintiff).

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant Mignon Faget's renewed motion for judgment as a matter of law is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** with respect to defendant's request to reduce the award of back

---

[79] Day 3 Trial Tr. 44:25–45:15.
[80] *Id.* 45:13–45:15.
[81] Defendant argues that it did not act with malice or reckless indifference because another of defendant's executives testified that he consulted an attorney when preparing plaintiff's severance paperwork. *See* R. Doc. No. 90, at 24. This testimony is irrelevant for present purposes. It concerns the actions of someone who did not decide to terminate plaintiff's employment after that decision was made.

pay, and the award of back pay is **REDUCED** to $10,096.15. The motion is **DENIED**

in all other respects.

New Orleans, Louisiana, July 1, 2025.

                                             **LANCE M. AFRICK**
                               **UNITED STATES DISTRICT JUDGE**