## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

SHELBY WEBB COX                                   CIVIL ACTION

VERSUS                                                No. 24-1068

MIGNON FAGET, LTD                                   SECTION I

### ORDER AND REASONS

Before the Court is a motion[1] for attorney's fees filed by plaintiff Shelby Webb Cox ("plaintiff"). Defendant Mignon Faget, Ltd. ("defendant") filed a response in opposition.[2] Plaintiff then filed a supplemental memorandum in support of her motion.[3] For the reasons set forth below, the Court grants the motion in part and denies the motion in part.

## I. BACKGROUND

Plaintiff filed a complaint that alleged several causes of action: pregnancy discrimination in violation of Title VII, 42 U.S.C. § 2000e-2; pregnancy discrimination in violation of Louisiana Revised Statute § 23:342; Family Medical Leave Act ("FMLA") interference in violation of 29 U.S.C. § 2615(a)(1); and FMLA retaliation in violation of 29 U.S.C. § 2615(a)(2). Plaintiff's prayer for relief included damages for back pay and benefits, compensatory damages, liquidated damages and punitive damages as well as prejudgment interest, post-judgment interest, and attorney's fees.[4]

---

[1] R. Doc. No. 80.
[2] R. Doc. No. 83.
[3] R. Doc. No. 100.
[4] R. Doc. No. 1, at 8–9.

After a four-day trial,[5] the jury returned a verdict in favor of plaintiff on all claims.[6] With respect to her FMLA damages, the jury found that plaintiff sustained $92,000 of damages in back pay.[7] However, the jury also found that plaintiff's damages for back pay should be reduced by $39,500 for plaintiff's failure to mitigate.[8] In total, the jury awarded plaintiff $52,500 in back pay. With respect to plaintiff's state and federal damage claims for pregnancy discrimination, the jury awarded plaintiff the same amount in back pay as it awarded plaintiff for back pay in connection with her FMLA claims.[9] In addition, the jury awarded plaintiff $4,000 in general damages in connection with her state and federal claims for pregnancy discrimination.[10] Finally, the jury awarded plaintiff $100,000 in punitive damages in connection with her Title VII claim for pregnancy discrimination.[11]

---

[5] *See* R. Doc. Nos. 58–61.

[6] R. Doc. No. 63.

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.* at 5.

[10] *Id.*

[11] Since Louisiana law does not provide for punitive damages, *see* La. R.S. § 23:303(A), the punitive damage award was only in connection with plaintiff's Title VII pregnancy discrimination claim. In accordance with 42 U.S.C. § 1981a(b)(3)(A), the Court subsequently issued, upon joint motion, an order reducing the punitive damage award to $50,000. *See* R. Doc. No. 67. Section 1981a(b)(3)(A) imposes a $50,000 cap on what Title VII plaintiffs may recover with respect to all damage awards except for back pay. Accordingly, § 1981a(b)(3)(A) serves to limit what plaintiff may recover in both general and punitive damages with respect to both her Title VII and state claims for pregnancy discrimination.

The parties stipulated that plaintiff would recover general damages pursuant to her state law claim. R. Doc. No. 98, at 3 n.15. For this reason, § 1981a(b)(3)(A) does not bar plaintiff from recovering the $4,000.00 award of general damages in connection with her state claim for pregnancy discrimination.

The Court thereafter issued an order and reasons granting in part and denying in part defendant's renewed motion for judgment as a matter of law.[12] Relevant here, the Court reduced the back-pay award to $10,096.15.[13] Subsequently, the Court issued an order and reasons awarding plaintiff liquidated damages in connection with her FMLA claims.[14]

In the instant motion, plaintiff seeks attorney's fees in connection with her FMLA claims and Title VII claim. Initially, plaintiff requested $199,197.94 in total.[15] That amount represented $167,589.50 in compensation, a $14,287.03 enhancement, and $17,314.43 in expenses.[16] In her supplemental memorandum, plaintiff seeks $9,934.00 in additional attorney's fees plus an additional $37.69 in costs.[17] In addition, plaintiff corrects a mathematical error in her initial calculation.[18] Altogether, plaintiff now seeks $209,048.08 in attorney's fees and costs.[19]

## II. STANDARD OF LAW

With respect to her FMLA claims, plaintiff is entitled to attorney's fees and costs pursuant to 29 U.S.C. § 2617(a)(3), which provides that a court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the

---

[12] R. Doc. No. 98.
[13] *Id.* at 25.
[14] *See* R. Doc. No. 101.
[15] R. Doc. No. 80-1, at 19.
[16] *See id.*
[17] R. Doc. No. 100, at 2.
[18] *See id.* at 3.
[19] *See id.*

defendant." With respect to her Title VII claim, plaintiff's request for attorney's fees and costs is governed by 42 U.S.C. § 2000e-5(k), which provides that a court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." Pursuant to § 2000e-5(k), prevailing plaintiffs "are to recover fees in all but special circumstances." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 621 (5th Cir. 2020) (citation modified).

"[T]he fee applicant bears the burden of establishing entitlement to an award." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). District courts have "broad discretion" in determining the amount of a fee award. *See Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000).  To calculate attorney's fees, "courts apply a two-step method for determining a reasonable attorney's fee award." *See Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016) (Title VII case); *see also, e.g.*, *Waller v. Salvation Army*, No. 20-cv-1336, 2024 WL 3939568, at *1 (N.D. Tex. Aug. 26, 2024) (FMLA case).

At the first step, courts calculate the lodestar by taking the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. *See Combs*, 829 F.3d at 392. "There exists a strong presumption of the reasonableness of the lodestar amount." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

"In calculating the lodestar, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Combs*, 829 F.3d at 392 (citation modified). "[P]laintiffs seeking attorney's fees are charged with the burden of showing the

reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment." *Saizan*, 448 F.3d at 799. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id.*

The appropriate hourly rate is "computed according to the prevailing market rates in the relevant legal market." *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000). "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citation modified). If the nonmoving party does not oppose the hourly rate, that rate is "*prima facie* reasonable." *Islamic Ctr. of Miss. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989).

At the second step, the court may enhance or decrease the lodestar based upon the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Combs*, 829 F.3d at 392. These factors are:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Saizan*, 448 F.3d at 800 n.18. An adjustment based on the *Johnson* factors is appropriate where the lodestar "does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *See Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 554 (2010). "[T]he most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37.

However, "[t]he lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account." *Saizan*, 448 F.3d at 800. For example, "[t]he first factor already is included in the lodestar." *Walker*, 99 F.3d at 771. "Novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986) (citation modified). The Fifth Circuit has long recognized that "enhancements are permissible only in a rare and exceptional class of cases." *Combs*, 829 F.3d at 394.

### III. ANALYSIS

The Court will now conduct the two-step procedure for calculating the attorney's fees to which plaintiff is entitled. The Court will then address which costs plaintiff is entitled to recover.

### a. Lodestar Amount

To calculate the lodestar amount, the Court will first consider whether the hourly rates of plaintiff's attorneys are appropriate. The Court will then determine whether the hours billed by plaintiff's attorneys were reasonable.

### i. Prevailing hourly rate

The Court first considers whether the hourly rates charged by plaintiff's attorneys are reasonable. Defendant does not dispute the regular hourly rates of Allison Jones ("Ms. Jones"), plaintiff's lead counsel, and her associates.[20] However, defendant does challenge the fact that the in-court hourly rates of Ms. Jones and Marcus Sandifer ("Mr. Sandifer"), who second-chaired the trial, are somewhat higher.[21] Ms. Jones's out-of-court hourly rate is $365, and her in-court rate is $400.[22] Mr. Sandifer's out-of-court hourly rate is $225, and his in-court rate is $260.[23]

Ms. Jones and Mr. Sandifer provided their own affidavits stating their rates for in-court work.[24] Those affidavits are satisfactory evidence of the reasonableness of their rates. *See Hallmark Cap. Grp., LLC v. 6320 Hayne Blvd., Inc.*, No. 06-cv-1324, 2007 WL 4257069, at *1 (E.D. La. Nov. 30, 2007) ("Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work . . . ." (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984))).[25]

---

[20] Doc. No. 83, at 12.
[21] *See id.* at 12–13.
[22] *See* R. Doc. No. 80-4, at 2.
[23] *See* R. Doc. No. 80-6, at 1.
[24] *See* R. Doc. Nos. 80-4, 80-6.
[25] There is no caselaw cited by defendant that suggests that a fee agreement must be produced in order to recover attorney's fees.

Plaintiff also established the reasonableness of in-court and out-of-court rates by submitting affidavits of four attorneys who have knowledge of prevailing rates for attorneys litigating employment disputes in the Eastern District of Louisiana.[26] *See Tollett*, 285 F.3d at 368 ("Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." (citation modified)). Each affidavit explicitly stated that Ms. Jones's and Mr. Sandifer's in-court rates are reasonable.[27] Accordingly, despite whatever confusion the parties may have had regarding any stipulations to the hourly rates of plaintiff's attorneys, the Court concludes that both the in-court and out-of-court hourly rates of plaintiff's attorneys are reasonable and need not be reduced.

### ii. Number of reasonable hours

Plaintiff asserts that, in total, her attorneys worked 584.3 hours.[28] Defendant raises several arguments to assail that total. Instead of addressing the arguments in the order in which they are raised, the Court will address defendant's challenges thematically.

### A. Challenges regarding deficiencies in the billing entries

Defendant asserts that the billing entries of plaintiff's counsel are deficient for several reasons. Defendant's principal argument is that plaintiff's attorneys engaged in "block billing," for which reason her proffered number of hours should be reduced.[29]

---

[26] See R. Doc. No. 100-1, at 1–12.
[27] *See id.* at 2, 5–6, 8–9, 11.
[28] *See* R. Doc. No. 80-2, at 14; R. Doc. No. 100-1, at 16.
[29] R. Doc. No. 83, at 3–8.

"'Block billing' refers to a time-keeping method by which each lawyer and legal assistant enter[s] the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *MGMTL, LLC v. Strategic Tech. Inst., Inc.*, No. 20-cv-2138, 2025 WL 958208, at *19 (E.D. La. Mar. 31, 2025) (Vitter, J.) (citation modified). "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation because the court cannot accurately determine the number of hours spent on any particular task." *U.S., ex rel., Cook-Reska v. Cmty. Health Sys., Inc.*, 641 F. App'x 396, 399 n.7 (5th Cir. 2016) (citation modified); *see also DeLeon v. Abbott*, 687 F. App'x 340, 346 n.4 (5th Cir. 2017) (Elrod, J., concurring in part and dissenting in part) (providing overview of caselaw regarding block billing). For example, block billing warrants a reduction in the number of hours where it prevents courts from ascertaining whether the hours worked were expended on the successful claims. *See Cook-Reska*, 641 F. App'x at 399.

To the contrary, the practice of lump billing—whereby attorneys lump the billing for multiple discrete tasks into a single entry—is less problematic. Although not the most precise form of billing, lump billing may nonetheless be "specific enough to determine that the hours claimed were reasonable for the work performed." *See Hollowell*, 217 F.3d at 393; c*f. C & D Prod. Servs. v. Dir., Off. of Worker's Comp. Programs*, 376 F. App'x 392, 394 (5th Cir. 2010) (holding that district court did not abuse its discretion in declining to reduce attorney's fees where counsel described multiple activities in single time entries because the entries were "sufficiently specific").

Upon review of the plaintiff's billing records, the Court is unconvinced that plaintiff impermissibly block or lump billed such that a reduction is warranted on that basis. Although plaintiff's counsel lump billed, the entries nonetheless describe tasks with sufficient detail. Accordingly, the Court will not exercise its discretion to reduce attorney's fees merely on the ground that counsel lumped multiple discrete tasks into a single entry.

Defendant argues that some entries should be disallowed because they are impermissibly vague. A court may reduce fees because of vague entries. *See MGMTL*, 2025 WL 958208, at *45. The Fifth Circuit has specifically explained "that practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *La. Power*, 50 F.3d at 327. For this reason, courts may, but are not required to, disallow hours when entries are so vague as to be "not illuminating as to the subject matter." *See id.* at 326.

Defendant argues that some of Mr. Sandifer's billing entries should be disallowed because of vagueness. [30] Upon review of his billing entries, the Court does not find they are impermissibly vague. Because the Court can discern the subject matter of the time entries, the Court does not find that a reduction is warranted on account of vagueness.

---

[30] *See id.* at 11–12.

Defendant challenges two entries by Ms. Jones as vague.[31] Both entries concern work that Ms. Jones performed in connection with the amended pretrial order and pretrial preparations.[32] Although the descriptions for these entries are not consummately descriptive, the Court does not find that they are so vague given their dates and context to be excludable. Accordingly, the Court will not discount the hours associated with those entries.

Defendant also identifies three problematic entries which warrant a reduction.[33] The first entry bills for 14 hours although only 12 are accounted for.[34] Accordingly, two hours totaling $800.00 must be discounted. The second entry is an entry billing for 13 hours on February 20, 2025 that is wholly duplicative of an entry on February 18, 2025.[35] Accordingly, the $5,200.00 in fees associated with the duplicative entry must be discounted. Third, defendant identifies an entry for March 20, 2025 by Mr. Sandifer.[36] The description for that entry is partially redacted. With the redactions, it describes that Mr. Sandifer met with Ms. Jones and then began working on what was discussed at their meeting. That description is "not illuminating as to the subject matter," and therefore $315.00 in associated fees may be discounted. *See La. Power*, 50 F.3d at 326. While the Court appreciates the fact that plaintiff's counsel was attempting to protect plaintiff's privacy, the Court is not convinced that

---

[31] *See id.* at 18.

[32] *See id.*

[33] *See id.* at 17.

[34] *See id.* The Court notes that defendant claims that only one hour is unaccounted for, but upon inspection the Court finds that two hours are not accounted for.

[35] *See id.*

[36] *See id.*

plaintiff's counsel could not have done so and still have provided further description. The Court will therefore deduct $315.00.

## B. Challenges regarding the reasonableness of the work performed

Defendant raises several arguments concerning the reasonableness of the hours worked on the grounds that the amount of time expended on certain tasks was excessive, that the subject work was duplicative or unnecessary, and that the subject work was ultimately unsuccessful.

Defendant contends that plaintiff's use of multiple attorneys led to duplicative and unnecessary work.[37] The Fifth Circuit has long recognized that "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 768 (5th Cir. 1996) (citation modified). For example, "[t]he time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." *Id.* (citation modified).

Defendant first points out that plaintiff's counsel worked about 20 hours and used two lawyers to formulate one set of discovery requests.[38] In total, plaintiff's counsel seeks about $6,201.50 in attorney's fees to formulate one set of discovery requests.[39] The Court finds that plaintiff has failed to meet her burden of demonstrating why 20 hours of work was necessary to produce discovery. Nowhere does plaintiff explain why nearly 20 hours was needed between two attorneys to

---

[37] *See id.* at 8–14.

[38] *See id.* at 9.

[39] *See id.*

produce one set of what the Court finds to be routine discovery requests. Accordingly, the Court will reduce plaintiff's attorney's fees with respect to discovery by 50% or $3,100.75.

Defendant challenges the fees incurred in connection with supplementing the briefing of the other post-trial motions with citations to the trial transcript.[40] Plaintiff's counsel expended approximately 15 hours on this task at a rate of $225.00 per hour.[41] Defendant argues that that amount of time is unreasonable, and the Court agrees. The Court will therefore apply a five-hour reduction totaling $1,125.00.

Next, defendant argues that some of Mr. Sandifer's work was duplicative and unnecessary and therefore should be discounted.[42] Mr. Sandifer assisted Ms. Jones both at trial and out of court. With respect to Mr. Sandifer's time at trial, plaintiff's counsel billed $12,090.00 in fees.[43] At trial, Mr. Sandifer did not question witnesses. As plaintiff explains, Mr. Sandifer's responsibilities were to "listen to testimony, observe the demeanor of witnesses and jurors, consider objections and responses to objections, assist in the preparation of witnesses and formulation of arguments, assist with communication with the client and coordination of witnesses at trial and otherwise engage in the myriad activities required to try a case from start to finish."[44]

"[W]hen multiple attorneys attend hearings, courts may exclude some hours based on the level of individual contribution by any or all of the attorneys." *MGMTL*,

---

[40] R. Doc. No. 95, at 3–4.
[41] *See id.*; *see also* R. Doc. No. 100-1, at 14–15.
[42] *See* R. Doc. No. 83, at 9–12.
[43] *See id.* at 10; *see also* R. Doc. No 80-2, at 9–11.
[44] R. Doc. No. 80-1, at 7–8.

2025 WL 958208, at *45. However, courts must be cautious when reducing fees as it "is not uncommon for more than one attorney to attend a hearing, a deposition, a settlement conference, or a trial." *See id.* This is especially true where a second chair "played a significant role in and outside the courtroom." *See id.*

Although Mr. Sandifer played a supporting role for Ms. Jones at trial, he nonetheless played a distinct role at trial and performed a number of responsibilities.[45] His work at trial is more significant given the role he played prior to trial such as drafting pretrial motions and proposed jury instructions.[46] Altogether, the Court finds that plaintiff is entitled to recover Mr. Sandifer's fees in connection with the hours he worked at trial. *Accord id.*; *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 940 (W.D. Tex. 2012) (awarding attorney's fee for work performed by the second chair at trial).

Defendant also argues that Mr. Sandifer's fees should be reduced because of his duplicative out-of-court work.[47] As an example, defendant points to the times for

---

[45] Defendant suggests that Mr. Sandifer's sole purpose at trial was to manage documents for Ms. Jones. R. Doc. No. 83, at 10–11. The Court does not find that suggestion to reflect the reality of Mr. Sandifer's role. As counsel credibly stated in plaintiff's motion, Mr. Sandifer's roles at trial included "listen[ing] to testimony, observ[ing] the demeanor of witnesses and jurors, consider[ing] objections and responses to objections, assist[ing] in the preparation of witnesses and formulation of arguments, assist[ing] with communication with the client and coordination of witnesses at trial and otherwise engag[ing] in the myriad activities required to try a case from start to finish." *See* R. Doc. No. 80-1, at 7–8.

[46] *See id.* at 7.

[47] R. Doc. No. 83, at 11–12.

which both Ms. Jones and Mr. Sandifer billed for work relating to the proposed jury instructions.[48]

The Court does not find Mr. Sandifer's work to be duplicative. Having reviewed the examples proffered by defendant, the Court concludes that evidence of duplicative work is lacking. For example, defendant notes that both Ms. Jones and Mr. Sandifer billed for time working on jury instructions on February 4, 2025.[49] However, Ms. Jones's billing entry for that date shows that she billed eight hours for six tasks, one of which was "continued work on jury instructions."[50] Likewise, Mr. Sandifer's billing entry for that date shows he billed eight hours for no less than five tasks.[51] All these billing entries demonstrate is that Ms. Jones and Mr. Sandifer performed work on the jury instructions on the same date along with an array of other tasks.

Defendant's next argument is that plaintiff should not recover attorney's fees associated with unsuccessful work.[52] Defendant identifies three items of work for which plaintiff should not recover attorney's fees: a demand letter, an unsuccessful EEOC mediation, and a motion for judgment as a matter of law.[53] In the Fifth Circuit,

---

[48] *See id.*

[49] *See id.* at 11.

[50] R. Doc. No. 80-2, at 5.

[51] *See id.*

[52] R. Doc. No. 83, at 17–18.

[53] *See id.* Defendant challenges the fees associated with the unsuccessful EEOC mediation on the ground that the work involved was ultimately unsuccessful rather than on the ground that it related to the EEOC proceedings. The Court nonetheless notes fees incurred in connection with EEOC proceedings are recoverable. *See Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552–53 (5th Cir. 1987) ("Time spent representing a client before the EEOC when required by Title VII is compensable under 42 U.S.C. § 2000e–5(k).").

"a party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim." *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003). Similarly, district courts in the Fifth Circuit have awarded prevailing parties attorney's fees incurred in connection with unsuccessful mediation. *See, e.g.*, *Denton v. City of El Paso*, No. 20-cv-85, 2022 WL 2712859, at *6 (W.D. Tex. July 13, 2022); *Protradenet, LLC v. Predictive Profiles, Inc.*, No. 18-cv-38, 2022 WL 2078032, at *5 (W.D. Tex. June 9, 2022); *Riddle v. Tex-Fin, Inc.*, No. 08-cv-3121, 2011 WL 1103033, at *9 (S.D. Tex. Mar. 22, 2011). Even though certain efforts of plaintiff's counsel were not successful, plaintiff's ultimate success on all her claims will entitle her to attorney's fees in connection with those unsuccessful efforts.

## C. Challenge regarding travel time

Defendant argues that fees relating to plaintiff's counsel's travel time should be disallowed.[54] Specifically, defendant contends that the Court should wholly disallow recovery for travel time or, in the alternative, reduce the award by 75%.[55] The Court agrees with defendant, but only to a certain extent.

"Courts often reduce working and non-working travel time." *Am. Zurich Ins. Co. v. Jasso*, 598 F. App'x 239, 250 (5th Cir. 2015) (citing *In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008)). The practice in the Fifth Circuit is that "travel time is often reduced by 50% of the attorney's rate absent evidence that any legal work was accomplished during travel time." *Richard v. St. Tammany Par. Sheriff's*

---

[54] R. Doc. No. 83, at 10, 14–16.
[55] *See id.* at 16.

*Dep't*, No. 17-cv-9703, 2022 WL 4534728, at *8 (E.D. La. Sept. 28, 2022) (Brown, J.); *see also Chrisman v. Austin*, No. 22-cv-49, 2024 WL 3864614, at *15 (N.D. Tex. Aug. 16, 2024) ("[C]ourts in the Fifth Circuit often reduce fees for travel time by 50% unless there is some indication that the attorney was working while traveling."). While caselaw supports defendant's position that the travel time should be reduced, it does not support defendant's position that it must be reduced by at least 75%.

Two of plaintiff's attorneys—Ms. Jones and Mr. Sandifer—traveled in this case.[56] Defendant calculates that this travel time amounts to $12,762.50 for 39.30 hours of travel time.[57] The Court's calculation differs slightly. Because plaintiff's counsel lump-billed, several hours not relating to travel are lumped together with travel time in certain billing entries. For this reason, the Court cannot easily distinguish in some entries between travel time and work either during or outside of travel time.

The Court finds that plaintiff's counsel billed 27 hours of travel time that did not include work. Ms. Jones traveled for 5.5 hours on January 8, 2025, 5.5 hours on January 13, 2025, 6 hours on February 16, 2025, and 5 hours on February 21, 2025.[58] Mr. Sandifer billed 5 hours for travel on February 21, 2025.[59] The fees incurred for travel time that did not include work amount to $9,115.00 in total.[60] The Court will reduce that amount by 50% for a reduction of $4,557.50.

---

[56] *Id.* at 10, 14–15.
[57] *See* R. Doc. No. 83-7.
[58] *See* R. Doc. No. 80-2, at 4–10.
[59] *Id.* at 10.
[60] *See id.* at 4–10.

Two entries involving travel are bundled with work tasks in such a way that the Court cannot parse out travel time that did not include work. The first entry bills 6 hours for travel and other work by Ms. Jones on January 29, 2025, and the second bills 6.3 hours for travel and other tasks by Mr. Sandifer on February 16, 2025.[61] Those 12.3 hours amount to $3,607.50 in attorney's fees.[62] Although the Court finds that work was completed during some of that travel time, the Court cannot discern how much of that travel time was spent working. Therefore, the Court will apply only a 30% reduction with respect to that travel time amounting to $1,082.25.

## D. Challenges regarding billing judgment

Defendant next argues that plaintiff's counsel failed to demonstrate billing judgment.[63] Specifically, defendant contends that plaintiff's counsel failed to demonstrate that they wrote off unproductive or redundant time.[64] The Fifth Circuit has explained that demonstrating billing judgment requires not only documentation of the hours charged but also documentation "of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799. Instead of providing documentation of unbilled time, plaintiff's motion represents that plaintiff's counsel deleted certain entries and then provided a spreadsheet of their billed time that excluded time written off.[65]

---

[61] *Id.* at 5, 8.

[62] *See id.*

[63] R. Doc. No. 83, at 16.

[64] *See id.*

[65] R. Doc. No. 80-1, at 6.

Although the Court has no evidence to believe that plaintiff's counsel is misleading the Court, the Court must conclude that plaintiff has failed, in some instances, to demonstrate that plaintiff's counsel exercised billing judgment. "The Fifth Circuit has repeatedly determined that bald assertions regarding the exercise of billing judgment are insufficient." *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 09-cv-0752, 2011 WL 487754, at *3 (N.D. Tex. Feb. 11, 2011). There is simply no documentation corroborating the assertions of plaintiff's counsel. Accordingly, a slight reduction in the lodestar amount is appropriate for the failure to demonstrate billing judgment. *See id.* (affirming the district court's reduction of attorney's fees where plaintiffs' counsel "neglect[ed] to list unbilled time"); *Hopwood v. State of Texas*, 236 F.3d 256, 279 (5th Cir. 2000) ("The Plaintiffs counter on appeal with an affidavit by one of the lead attorneys, insisting that he indeed did exercise billing judgment. Without more, however, the Plaintiffs cannot demonstrate that the district court abused its discretion.").

The Court will exercise its discretion to apply a final 5% reduction of the lodestar amount after taking the other reductions into account. The Court will apply only a 5% reduction because, upon its review of the time entries, the Court finds that the timesheets generally do not contain duplicative or unnecessary work. *See Saizan*, 448 F.3d at 799 (explaining that courts should reduce the attorney's fee for a failure to exercise billing judgment by "a percentage intended to substitute for the exercise of billing judgment").

**E. Challenges relating to plaintiff's motion for attorney's fees**

Defendant also asserts several challenges relating to the fees incurred in connection with preparing and litigating plaintiff's entitlement to attorney's fees.[66] Federal caselaw teaches that prevailing plaintiffs may recover attorney's fees associated with litigating the issue. *See, e.g.*, *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990) ("The district court may award attorney fees at market rates for the entire course of litigation, including time spent preparing, defending, and appealing the two awards of attorney fees . . . ."); *Tyler Bus. Servs., Inc. v. N.L.R.B.*, 695 F.2d 73, 77 (4th Cir. 1982) ("The amount of recovery may include the time spent preparing and prosecuting the motion for attorney's fees."); *cf. Kahane v. UNUM Life Ins. Co. of Am.*, 563 F.3d 1210, 1216 (11th Cir. 2009) (upholding district court's award of 13.5 hours worth of fees associated with the preparation of the motion for attorney's fees).

Although defendant recognizes that plaintiff is entitled to recover fees associated with preparing the motion for attorney's fees, defendant argues the hours expended by plaintiff's counsel on its motion are unreasonable.[67] Defendant points out that plaintiff's counsel has charged over 25 hours of work in connection with preparing the motion for attorney's fees.[68]

Four attorneys in addition to "paralegals and/or legal assistants" worked on plaintiff's case.[69] Considering the time it took to procure affidavits, prepare the time

---

[66] R. Doc. No. 83, at 23; R. Doc. No. 95, at 3.
[67] R. Doc. No. 83, at 23.
[68] *See id.*
[69] R. Doc. No. 80-1, at 19.

entries, complete legal research, and to draft the motion, the Court does not find that the hours plaintiff's counsel has charged is unreasonable.

Defendant also raises objections in its opposition to plaintiff's motion for leave to file a supplemental memorandum in support of her motion for attorney's fees.[70] The Court notes that defendant fails to cite even a single case in support thereof. Defendant argues, first, that plaintiff cannot recover for the time her counsel spent procuring affidavits in support of the instant motion and, second, that plaintiff cannot recover for the time her counsel spent preparing her motion for leave to file her supplemental memorandum in support of her motion for attorney's fees.[71]

Defendant cites no precedent holding that fees associated with procuring affidavits or supplementing a memorandum are not compensable. Affidavits of local counsel are the most common method of establishing prevailing rates. *See Tollett*, 285 F.3d at 368 ("Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." (citation modified)). Accordingly, the Court will not exercise its broad discretion to disallow the subject fees.

---

[70] *See* R. Doc. No. 95.
[71] *See id*. at 3.

*ii. Calculation of lodestar amount*

Before costs and enhancements, plaintiff's estimates her lodestar to be $177,418.48.[72] Because the Court finds that plaintiff's counsel's rates are reasonable, the Court need not reduce the rates.

However, as explained above, the Court found it appropriate to reduce or disallow certain billing entries. In total, these deductions and disallowances amount to a $16,230.50 reduction in the estimated lodestar amount ($800.00 + $5,200.00 + $315.00 + $3,150.75 + $1,125.00 + $4,557.50 + $1,082.25). This reduction results in a lodestar amount of $161,187.98. The Court must also reduce this amount by 5% because of the Court's previous finding that plaintiff's counsel failed to demonstrate billing judgment. A 5% reduction amounts to $8,059.40. With this reduction, the total lodestar amount is $153,128.58.[73]

---

[72] This amount represents the sum of the original corrected lodestar amount (167,484.48), *see* R. Doc. No. 100, at 3, plus the amount of fees requested in plaintiff's supplemental memorandum ($9,934.00), *see id.* at 2.

[73] The Court notes that plaintiff moves to recover fees incurred by "paralegals and/or legal assistants." R. Doc. No. 80-1, at 19. Although paralegal assistance is generally not compensable, *see Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) ("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical."), there is an exception in Title VII cases. *See Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) ("This Court has interpreted the 'attorney's fee' allowed by Section 2000e–5(k) to include reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs." (citation modified)).

### b. Adjustments

With the lodestar amount calculated, the Court considers whether an enhancement of the lodestar is appropriate. Plaintiff argues that the lodestar should be adjusted upward by $14,277.48.[74] Defendant opposes plaintiff's request.[75]

As previously mentioned, the Fifth Circuit has unequivocally stated that "enhancements are permissible only in a rare and exceptional class of cases." *Combs*, 829 F.3d at 394. Having considered the *Johnson* factors, the Court concludes that the factors either are subsumed within the Court's lodestar calculation or do not warrant an adjustment of the lodestar.[76] Accordingly, the Court does not find any reason that would qualify this case as a rare and exceptional one in light of the *Johnson* factors.

Plaintiff's principal argument seems to be that an enhancement is appropriate and warranted because plaintiff's counsel will not be paid until two years after they began representing plaintiff.[77] Plaintiff cites no support in connection with this argument. Because prevailing attorneys must always wait to be paid until the conclusion of litigation, plaintiff's logic would result in an enhancement in nearly every case in which attorney's fees are ordered. The Court rejects plaintiff's argument and her request for an enhancement of the lodestar amount.

---

[74] R. Doc. No. 80-1, at 16; R. Doc. No. 100, at 3.

[75] R. Doc. No. 83, at 23–24.

[76] The Court notes that plaintiff and plaintiff's counsel entered into a contingency fee agreement. *See* R. Doc. No. 80-1, at 13–14. The contingent nature of the fee agreement counsels against an enhancement of the lodestar. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 323 (5th Cir. 1993) (stating that "the contingent nature of the case cannot serve as a basis for enhancement of attorneys' fees awarded to prevailing plaintiffs").

[77] R. Doc. No. 80-1, at 16.

### c. Costs

Plaintiff seeks $17,352.12 in total costs.[78] Defendant raises a panoply of challenges.[79] The Court will address each in turn.

An award of costs is a matter of the district court's discretion. *See Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001). In connection with her Title VII claim, plaintiff may recover costs pursuant to § 2000e-5(k). Such costs "include reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs." *See id.* (citation modified). To be reasonable, such costs must not be "extravagant or unnecessary." *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 553 (5th Cir. 1987). Pursuant to § 2617(a)(3), plaintiff may recover costs also in connection with her FMLA claims. According to the practice of Fifth Circuit district courts, "the taxable costs permitted in an FMLA action are basically the same as for taxable items for a bill of costs under [28 U.S.C.] § 1920." *Waller v. Salvation Army*, No. 20-cv-1336, 2024 WL 3939568, at *6 (N.D. Tex. Aug. 26, 2024) (citation modified). Relevant here, § 1920 allows for taxing of costs such as transcripts and copying "necessarily obtained for use in the case." *See* § 1920(2), (4).

---

[78] That sum represents the original sum of costs ($17,314.43), *see* R. Doc. No. 80-1, at 19, along with the additional costs identified in plaintiff's supplemental memorandum ($37.69), *see* R. Doc. No. 100, at 2.

[79] R. Doc. No. 83, at 18–23.

Defendant first challenges plaintiff's travel expenses.[80] This argument is unavailing, as travel costs are recoverable pursuant to § 2000e-5(K). *See Mota*, 261 F.3d at 529. The case on which defendant relies, *Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499 (E.D. La. 2018), is easily distinguishable. There, plaintiff hired out-of-state attorneys who required *pro hac vice* admission, and the court refused to award costs associated with the attorneys' travel as unreasonable. *See id.* at 517. In this case, however, plaintiff hired in-state counsel who is a member of the bar of this Court. The Court does not find that awarding plaintiff's counsel travel costs is unreasonable.

Defendant next challenges the $65.00 incurred by plaintiff's counsel for notarization.[81] Defendant argues that plaintiff has failed to explain the need for the notarizations.[82] Plaintiff attached the invoices associated with the notarizations to prove that the costs were indeed incurred.[83] However, plaintiff does not explain in her motion why these notary charges were necessary. Accordingly, the Court will deduct $65.00 in costs.

Defendant next challenges the $101.78 cost for a foam core sign.[84] Plaintiff attached the invoice to prove that the cost was incurred.[85] However, plaintiff has not explained why the sign was needed. Consequently, the Court is unable to conclude

---

[80] *See id.* at 19–20.
[81] *See id.* at 20.
[82] *See id.*
[83] R. Doc. No. 80-3, 3–4, 6.
[84] R. Doc. No. 83, at 20.
[85] R. Doc. No. 80-3, at 17.

that the sign was not an extravagant or unnecessary expense and that it was a reasonable out-of-pocket expense. Accordingly, the Court will deduct the $101.78 expense.

Defendant next challenges the costs incurred by plaintiff's counsel at Choice Copy Services, LLC for a total of $410.52.[86] Defendant states that it is unaware of what these costs relate to and therefore cannot determine the reasonableness of the expense.[87] Plaintiff attaches the invoice associated with the charge.[88] However, plaintiff does not explain the reason why these charges were necessary. Accordingly, the Court will disallow the $410.52 expense.

Defendant also challenges as unreasonable the costs associated with photocopying.[89] Defendant speculates that plaintiff is charging $1.00 per page.[90] For its own part, the Court cannot calculate the rate because nowhere does plaintiff explain how many copies were made for a particular charge.[91] Because the Court has not been provided enough information to determine whether the rate is reasonable, the Court will apply a 50% reduction of the photocopying costs. The Court calculates

---

[86] *See* R. Doc. No. 83, at 21.

[87] *See id.*

[88] R. Doc. No. 80-3, at 8.

[89] R. Doc. No. 83, at 21.

[90] *See id.* Defendant argues that plaintiff charged $1.00/page because plaintiff's counsel charged $19.00 in connection with photocopying a 19-page document. *See id.* However, there is no evidence that plaintiff made only a single photocopy of that document. Because the number of copies that were made is unknown, defendant's asserted rate is speculative at best.

[91] *See* R. Doc. No. 80-3, at 1–2.

that, in total, plaintiff incurred $1605.50 in photocopying costs.[92] Accordingly, the Court will apply a $802.75 reduction.

Defendant next challenges the taxing of costs associated with the deposition transcripts and video depositions.[93] The Fifth Circuit has held that the costs of videotaped depositions are not taxable pursuant to § 2000e-5(k). *See Mota*, 261 F.3d at 530. However, § 1920 permits the recovery of the costs for both printed deposition transcripts and videotaped depositions if they are necessarily obtained for use in the case. *See Alonzo-Miranda*, 2015 WL 3651830, at *7; § 1920(2).

Defendant argues that both printed transcripts and video transcripts of the same depositions were duplicative and unnecessary.[94] Plaintiff has not explained why video transcripts were necessary in addition to printed transcripts. And the Court cannot discern one for itself given that the deponents testified at trial and the video was not used. *See Alonzo-Miranda*, 2015 WL 3651830, at *7 ("However, courts have often found such costs unwarranted where cases aren't particularly complex, the witness would have been available for trial testimony, or the video was not used at trial."). According to plaintiff's invoices, plaintiff expended $2,068.75 for the video transcripts.[95] The Court will discount that amount from plaintiff's bill of costs.

---

[92] This amount does not include the photocopying costs for $2,373.06 incurred on February 10, 2025 because there is an invoice for that charge stating the cost per page. *See id.* at 13. The cost of black and white copies was $0.10/page and $1.00/page for color copies. *See id*. Defendant does not raise a specific objection to these rates. *See* R. Doc. No. 83, at 21. This $2,373.06 expense is accounted for in plaintiff's $17,352.12 total estimated costs.

[93] R. Doc. No. 83, at 21–22.

[94] *See id.* at 22.

[95] *See* R. Doc. No. 80-3, at 9–10.

Defendant's final argument concerns a $1,663.75 charge for the trial transcript.[96] Defendant represents that the charge is 50% of the total cost of the trial transcript.[97] The Court ordered the parties to obtain a copy of the trial transcripts in order to supplement briefing with citations to the trial record.[98] Defendant requests that it only be taxed that amount.[99] Defendant recognizes, however, that it may be fully taxed the cost of the transcript if the Court ruled against defendant with respect to its renewed motion for judgment as a matter of law as well as plaintiff's motion for liquidated damages.[100] The Court has ruled against defendant with respect to both post-trial motions.[101] Accordingly, the Court will tax the full cost of the trial transcript against defendant.

In sum, plaintiff is entitled to recover $15,567.07 in total costs. That amount represents the $17,352.12 that plaintiff sought in total costs plus the other half of the cost of the trial transcript minus the reductions discussed above.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall be awarded $153,128.58 in attorney's fees and $15,567.07 in costs.

---

[96] R. Doc. No. 83, at 22–23.
[97] *Id.* at 22.
[98] *See* R. Doc. Nos. 78–79.
[99] R. Doc. No. 83, at 23.
[100] *See id.* at 23 n.16.
[101] *See* R. Doc. Nos. 98, 101.

New Orleans, Louisiana, July 18, 2025.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**